**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| In re: | Jointly Administered Under Case No. 17-30673 (MER) |
| Gander Mountain Company, Overton's, Inc., | Case No. 17-30673 Case No. 17-30675 |
| Debtors. | Chapter 11 Cases |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT PLAN OF LIQUIDATION DATED OCTOBER 31, 2017**

Gander Mountain Company, Overton's, Inc. (together with Gander Mountain Company, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee") having filed (a) the *Debtors' and Official Committee of Unsecured Creditors' Joint Plan of Liquidation Dated October 31, 2017* [Docket No. 1359] (as modified, amended, or supplemented from time to time in accordance with its terms, the "Plan"),[1] and (b) the documents comprising the Plan Supplement, as filed in substantially final form, and as may be modified, amended, or supplemented prior to the Effective Date [Docket No. 1518]; and this Court having entered that certain *Order Approving Amended Disclosure Statement* [Docket No. 1431]; and this Court having entered that certain *Order (I) Authorizing Donlin, Recano & Company, Inc. to Act as Balloting Agent; (II) Approving Solicitation Packages and Distribution Procedures, Including the Confirmation Hearing Notice; (III) Approving Ballot Forms and Plan Voting Procedures; (IV) Approving Forms of Notices to Non-Voting Classes under the Plan; (V) Fixing the Voting Deadline to Accept or Reject the Plan; and (VI) Approving the Procedures for Vote Tabulations*

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan, which is attached hereto as Exhibit A.

[Docket No. 1432] (the "Voting Procedures Order") establishing, among other things, certain solicitation and voting tabulation procedures associated with the Plan; and true and correct copies of the Plan (including the Plan Supplement) being attached hereto collectively as Exhibit A; and this Court having conducted an evidentiary hearing to consider confirmation of the Plan commencing on January 25, 2018 (the "Confirmation Hearing"); and the Debtors having filed their verified Motion For Substantive Consolidation of the Debtors' Assets, Liabilities, and Operations [Docket No. 478] (the "Substantive Consolidation Motion"); and this Court having considered: (a) the declarations (and attached exhibits) offered in support of confirmation, including (i) the *Declaration of Timothy G. Becker In Support of Confirmation of Debtors' and Official Committee of Unsecured Creditors' Joint Plan of Liquidation Dated October 31, 2017* [Docket No. 1552] (the "Lighthouse Declaration"), (ii) the Certificate of Service filed by Donlin, Recano & Company, Inc. [Docket No. 1456] (the "Donlin COS"), (iii) the *Affidavit of Jeffrey Cohen in Connection with Debtors' and Official Committee of Unsecured Creditors' Joint Chapter 11 Plan of Liquidation* [Docket No. 1532] (the "Cohen Declaration"), (iv) the *Ballot Report* [Docket No. 1551] (the "Ballot Report") and (v) the *Declaration of Jung W. Song on Behalf of Donlin, Recano & Company, Inc. Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Debtors' and Official Committee of Unsecured Creditors' Joint Plan of Liquidation Dated October 31, 2017* [Docket No. 1551-1] (the "Song Declaration"); (b) the arguments of counsel and all evidence proffered or adduced at the Confirmation Hearing; and (c) the objections to confirmation of the Plan to the extent not resolved or withdrawn prior to or at the Confirmation Hearing (collectively, the "Objections"); and this Court being familiar with the Plan and the relevant facts and circumstances concerning these Chapter 11 cases; and this Court having taken judicial notice of the entire docket of the these Chapter 11 cases, including

2

all pleadings and other documents filed and all orders entered in these Chapter 11 cases; and this

Court having found that due and proper notice has been given with respect to the Confirmation

Hearing and the deadlines and procedures for voting on the Plan and asserting objections to the

Plan consistent with the Voting Procedures Order; and the appearance of all interested parties

having been duly noted in the record of the Confirmation Hearing; and this Court having

overruled all Objections that were not otherwise resolved or withdrawn; and upon the record of

the Confirmation Hearing, and after due deliberation thereon, and sufficient cause appearing

therefor;

**IT IS HEREBY FOUND AND CONCLUDED**, that

## A.    Jurisdiction and Venue

A.    This Court has jurisdiction over this matter and these Chapter 11 cases

pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and this Court has jurisdiction to enter a Final Order with respect thereto.

## B.    Standards for Confirmation Under Section 1129 of the Bankruptcy Code

C.    The evidentiary record at the Confirmation Hearing, the contents of the

Plan, the Lighthouse Declaration, the Donlin COS, the Ballot Report, the Song Declaration, and

this Court's judicial notice of the complete record of these Chapter 11 cases support the findings

of fact and conclusions of law set forth in the following paragraphs.

D.    <u>Section 1129(a)(1)</u>. The Plan complies with each applicable provision of

the Bankruptcy Code. In particular, the Plan complies with the requirements of sections 1122 and

1123 of the Bankruptcy Code as follows:

1.    In accordance with section 1122(a) of the Bankruptcy Code, (a) Article III
of the Plan classifies Claims and Equity Interests into four separate

Classes reflecting the differing characteristics of those Claims and Equity Interests between Classes and the distinct legal rights of the Holders of those Claims and Equity Interests in the separate Classes; and (b) the Claims and Equity Interests within each Class are substantially similar to the other Claims or Equity Interests within the same Class.

2. In accordance with section 1123(a)(1) of the Bankruptcy Code, Article III of the Plan properly designates all Claims and Equity Interests, if any, that require classification.

3. In accordance with section 1123(a)(2) of the Bankruptcy Code, (a) Article III of the Plan properly identifies and describes that Class 1 is unimpaired under the Plan, and (b) Article II of the Plan properly identifies and describes that any Administrative Claim, Accrued Professional Compensation, Priority Tax Claims, and Other Priority Claims, which are not classified under the Plan, also are unimpaired under the Plan.

4. In accordance with section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan properly identifies and describes that Classes 2, 3, and 4 are impaired under the Plan and specifies the proposed treatment for such Classes.

5. In accordance with section 1123(a)(4) of the Bankruptcy Code, Article IV of the Plan provides the same treatment for each Claim or Equity Interest within a particular Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest.

6. In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation, including, without limitation, (a) substantive consolidation of the Debtors' estates; (b) sources of consideration for distributions under the Plan for Class 3; (c) a source of funding to pay the Administrative Claims, Accrued Professional Claims, Priority Tax Claims and Other Priority Claims; (d) the formation of the Liquidating Trust to administer the Liquidating Trust Assets, resolve Disputed Claims, and make distributions to Holders of Allowed Claims; (e) the creation of reserves for the payment of specified Claims; (f) the cancellation of the Debtors obligations under any indentures, notes, bonds, and share certificates and other documents; (g) the wind-down and dissolution of the Estates; and (h) the closing of the Chapter 11 cases.

7. Section 1123(a)(6) of the Bankruptcy Code is not applicable in this case because, pursuant to Section IV(A)(Q) of the Plan, the Debtors will be dissolved.

8. Section 1123(a)(7) of the Bankruptcy Code is satisfied because, as of the Effective Date, (a) the persons acting as officers and directors of the

Debtors have no continuing obligations on or after the Effective Date; (b) the Liquidating Trustee shall have duties imposed under applicable law, in each case, solely with respect to the matters described in, and pursuant to the terms of, the Plan and the Liquidating Trust Agreement; (c) the selection and appointment of the Liquidating Trustee was made in accordance with the Plan and the Liquidating Trust Agreement.

9. Section 1123(a)(8) of the Bankruptcy Code is not applicable in this case because the Debtors are not "individuals."

10. The following provisions of the Plan comply with the discretionary provisions of section 1123(b) of the Bankruptcy Code: (a) Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Equity Interests; (b) Article VII of the Plan provides that any remaining Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date; (c) Article V of the Plan establishes procedures for distributions on account of Allowed Claims; (d) Article VI of the Plan establishes procedures for resolving Disputed Claims; (e) Article IX of the Plan contains provisions implementing certain exculpations and injunctions; and (f) Article X of the Plan provides for the retention of jurisdiction by this Court over certain matters after the Effective Date.

11. Section 1123(c) of the Bankruptcy Code is not applicable in these cases because the Debtors are not "individuals."

12. In accordance with section 1123(d) of the Bankruptcy Code, no executory contracts or unexpired leases will be assumed.

13. The Plan is dated and identifies its proponent in accordance with Bankruptcy Rule 3016(a).

E. Section 1129(a)(2). The Debtors have complied with all applicable provisions of the Bankruptcy Code with respect to the Plan and the solicitation of acceptances or rejections thereof. In particular, the Plan complies with the requirements of sections 1125 and 1126 of the Bankruptcy Code as follows:

1. In compliance with the Voting Procedures Order, the Debtors, through Donlin, Recano & Company, Inc., served the materials as designated in the Donlin COS in full compliance with the Voting Procedures Order.

2. In addition, in compliance with the Voting Procedures Order, copies of the Voting Procedures Order, the Plan, and the Disclosure Statement have

been available upon request from the Debtors' counsel and, free of charge, at www.donlinrecano.com/gmc (the "Donlin Website").

3.    On January 15, 2018, the Debtors filed the Plan Supplement [Docket No. 1518] and made the Plan Supplement available on the Donlin Website.

4.    The Confirmation Hearing Notice provided due and proper notice of the Confirmation Hearing and all relevant dates, deadlines, procedures and other information relating to the Plan and/or the solicitation of votes thereon, including, without limitation, the Voting Deadline and the Confirmation Objection Deadline (as such terms are defined in the Confirmation Hearing Notice), and the time, date and location of the Confirmation Hearing.

5.    Based on the foregoing and the Voting Procedures Order, all persons entitled to receive notice of the Disclosure Statement, the Plan, and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Voting Procedures Order, the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

6.    Based on the foregoing, the Debtors and the Committee solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Voting Procedures Order.

7.    Based upon the procedures approved in the Voting Procedures Order, Donlin, Recano & Company, Inc. has made a determination regarding the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by Holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims or Equity Interests in Classes 2 and 3 under the Plan. (*See* Ballot Report.)

8.    The Song Declaration sets forth the tabulation of votes and demonstrates that such tabulation was conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Voting Procedures Order.

F.    Section 1129(a)(3). The Plan accomplishes the goals promoted by section 1129(a)(3) of the Bankruptcy Code because it has been proposed by the Debtors and the Committee in good faith and in the belief that the Plan allows creditors to realize the highest possible recoveries under the circumstances of the Chapter 11 cases. The Debtors and the Committee proposed the Plan with the purpose of establishing the Liquidating Trust and

distributing value to creditors. In crafting and negotiating the terms of the Plan, and at all times during the Chapter 11 cases, the Debtors (a) conducted themselves honestly, with good intentions, and (b) upheld their fiduciary duties to stakeholders. The Plan enjoys significant support by the Debtors' stakeholders, as evidenced by the result of the votes in Classes 2 and 3, both of which accepted the Plan. In so finding, this Court has considered the totality of the circumstances in the Chapter 11 cases. In addition, the support of the voting classes reflects the overall fairness of the Plan and supports the finding that the Plan has been proposed in good faith and for proper purposes.

G.      Section 1129(a)(4). Article II of the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code. Payments made, or to be made, by the Debtors for services rendered or expenses incurred in connection with the Chapter 11 cases prior to the Effective Date will be paid only after allowance of such Claims by this Court to the extent not previously approved and paid in accordance with existing Orders from this Court. This Court will retain jurisdiction after the Effective Date with respect to allowance of Accrued Professional Compensation and reimbursement of expenses incurred up to and through the Effective Date in accordance with Article II of the Plan.

H.      Section 1129(a)(5). The Committee has disclosed the identity and qualifications of the Liquidating Trustee in accordance with section 1129(a)(5) of the Bankruptcy Code. *See* Cohen Declaration. The governance of the Liquidating Trust is set forth in Article IV of the Plan. The appointment of the Liquidating Trustee is consistent with the interests of creditors and with public policy.

I.      Section 1129(a)(6). The Plan does not provide for any rate changes by the Debtors that would be subject to approval of any governmental regulatory commission.

Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable in these Chapter 11 cases.

J.      Section 1129(a)(7). The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code, which is often known as the "best interests test." The Liquidation Analysis (an updated version of which is attached to the Lighthouse Declaration as Exhibit A), including the methodology used and assumptions made therein, (a) is persuasive and credible as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) is based upon reasonable and sound assumptions; and (d) provides a reasonable estimate of the liquidation value of the Estates upon a hypothetical conversion of the Chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. Each holder of an impaired Claim or Equity Interest that has not accepted or is deemed not to have accepted the Plan will, on account of such Claim or Equity Interest, receive or retain property under the Plan having a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. The Debtors and the Committee have demonstrated that the Plan is in the best interests of the creditors.

K.      Section 1129(a)(8). Class 1 under Article III of the Plan is presumed to accept the Plan because such Class is unimpaired. As reflected in the Ballot Report and the Song Declaration, the Plan has been accepted by creditors holding in excess of two-thirds in amount and one-half in number of Claims that voted in each of Classes 2 and 3.

L.      Section 1129(a)(9). Article II of the Plan provides that, unless a particular Holder has agreed to different treatment of such claim, Holders of an Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims will be paid in full in

8

Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not already paid in full prior to the Effective Date) in full satisfaction of their Claims, in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code.

M.     Section 1129(a)(10). The Plan has been accepted by Classes 2 and 3, which are Impaired Classes. With regard to both such classes, acceptance was obtained without including the acceptance of the Plan by any insider. Accordingly, there is at least one impaired accepting Class of Claims, thus satisfying section 1129(a)(10) of the Bankruptcy Code.

N.     Section 1129(a)(11). The Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code. The evidence proffered or adduced at the Confirmation Hearing establishes that the assets to be transferred to the Liquidating Trust will be sufficient to enable the Liquidating Trustee to perform the duties and functions outlined under the Plan and to satisfy post-Effective Date obligations. Furthermore, reasonable, persuasive, and credible evidence proffered or adduced at or prior to the Confirmation Hearing establishes that the Plan is feasible. Finally, because the Plan contemplates a liquidation, confirmation of the Plan is not likely to be followed by the need for further financial reorganization.

O.     Section 1129(a)(12). The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.   Pursuant to Section V(M) of the Plan, all U.S. Trustee Fees that are due prior to the Effective Date shall be paid in full by the Debtors. From and after the Effective Date, the Liquidating Trustee shall pay all U.S. Trustee Fees payable by the Debtors, when due and payable until the Chapter 11 cases are closed.

P.     Section 1129(a)(13). The Debtors have no "retiree benefits" (as such term is defined by section 1114(a) of the Bankruptcy Code) so this provision is not applicable in these Chapter 11 cases.

Q.      Sections 1129(a)(14), (15), and (16). Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code apply to individuals or nonprofit entities and are inapplicable in these Chapter 11 cases.

R.      Section 1129(b). All impaired classes have voted to accept the Plan. Upon entry of this Order and the occurrence of the Effective Date, the Plan shall be binding upon all Holders of Claims and Equity Interests, regardless of whether they accepted or rejected the Plan, or whether they are presumed to accept or deemed to reject the Plan.

S.      Section 1129(c). The Plan is the only plan on file in these Chapter 11 cases, and it is the only plan that has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

T.      Section 1129(d). No party in interest, including, but not limited to, any governmental unit, has requested that this Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is "the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933," and the principal purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

U.      Section 1129(e). Section 1129(e) of the Bankruptcy Code is not applicable because these Chapter 11 cases are not "small business cases".

## C.      Additional Findings of Fact

V.      Executory Contracts and Unexpired Leases. The Debtors have exercised reasonable business judgment in determining to reject the executory contracts and unexpired leases as set forth in Article VII of the Plan or otherwise, and in this Order. The assumption,

assumption and assignment, or rejection of executory contracts and unexpired leases pursuant to this Order and in accordance with Article VII of the Plan is in the best interests of the Debtors, the Estates, Holders of Claims and Equity Interests, and other parties in interest. The Debtors satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases under the Plan.

      W.    <u>Exculpation and Injunction Provisions</u>. This Court finds that, pursuant to section 1123(b) of the Bankruptcy Code, Bankruptcy Rule 3016, and applicable authority, the exculpation and injunction provisions of the Plan are warranted, necessary and appropriate and are supported by sufficient consent and consideration under the circumstances of the Plan and the Chapter 11 cases as a whole. Proper, timely, adequate, and sufficient notice of the exculpation and injunction provisions contained in Article IX of the Plan has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the orders of this Court, and due process. Interested parties have had a sufficient and adequate opportunity to object to such provisions and to be heard as to their objections, and no further notice of such provisions is required for entry of this Order. The exculpation and injunction provisions set forth in the Plan and this Order: (a) are within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) comprise an integral element of the Plan; (c) confer material benefit on, and are in the best interests of, the Debtors, the Estates, and Holders of Claims and Equity Interests; (d) are important to the objective of the Plan to resolve all Claims and Equity Interests; and (e) are consistent with sections 105, 1123, and 1129 and other applicable provisions of the Bankruptcy Code and any other applicable laws.

X.      Substantive Consolidation. Given the facts and circumstances set forth in the Substantive Consolidation Motion, (a) the Debtors' intertwined relationship would be impossible or impracticable to unravel; (b) the benefits of consolidation outweigh any harm to creditors; and (c) creditors may be prejudiced if the Debtors are not consolidated.

Y.      Stay Waiver. This Court finds that, in order to permit the Debtors and the Liquidating Trustee to commence their duties as quickly as practicable, to promote prompt distributions under the Plan for the benefit of creditors, good cause exists to support the waiver of the stay imposed by Bankruptcy Rule 3020(e).

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:**

**A.      Resolution of the Objections**

1.      Any and all objections or responses to final approval of the Plan, including the Objections, that have not been withdrawn, waived or resolved by the terms of this Order, agreement of the parties, or otherwise are hereby OVERRULED in their entirety and on their merits, and all withdrawn, waived or resolved objections or other objections or responses are hereby deemed withdrawn with prejudice.

**B.      Confirmation of the Plan**

2.      The Plan and each of its provisions, all documents and agreements necessary for its implementation, including, without limitation, those contained in the Plan Supplement, which are hereby collectively incorporated into this Order in all respects, are hereby APPROVED and CONFIRMED pursuant to section 1129 of the Bankruptcy Code.

3.      The Effective Date of the Plan shall occur on the date determined by the Debtors when the conditions set forth in Article VIII of the Plan have been satisfied or, if applicable, waived in accordance with the Plan.

**C.      Plan and Confirmation Order Controls**

4.      Without intending to modify any prior Order of this Court (or any agreement, instrument or document addressed by any prior Order), in the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in the Plan or such agreement, instrument, or document).

5.      The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each other; provided, however, that if there is any direct conflict between the Plan, the Plan Supplement, and the terms of this Order, the terms of this Order shall control.

**D.      Findings of Fact and Conclusions of Law**

6.      The findings of fact and conclusions of law stated in this Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 cases by Bankruptcy Rule 9014. Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact. Further, any findings of fact and conclusions of law announced on the record in open court at the Confirmation Hearing are incorporated by reference herein.

**E.      Record Closed**

        7.      The record of the Confirmation Hearing is now closed.

**F.      Notice**

        8.      Good and sufficient notice has been provided of (a) the Confirmation Hearing; (b) the deadline for filing and serving objections to the confirmation of the Plan; and (c) the settlements, exculpations, injunctions, and related provisions of the Plan. No other or further notice is required.

**G.      Plan Modifications**

        9.      The modifications to the Plan, as memorialized in this Order, meet the requirements of section 1127 of the Bankruptcy Code. Such modifications do not result in a material adverse change in the treatment of any Claim or Equity Interest within the meaning of Bankruptcy Rule 3019 and, accordingly, no further solicitation of votes or voting is required.

**H.      Plan Classification Controlling**

        10.      The terms of the Plan alone shall govern the classification of Claims and Equity Interests for purposes of distributions to be made thereunder. The classifications set forth on the ballots tendered to or returned by Holders of Claims in connection with voting on the Plan (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Equity Interests under the Plan for distribution purposes; (c) should not be relied upon by any Holder of Claims or Equity Interests as representing the actual classification of such Claims or Equity Interests under the Plan for distribution purposes; and (d) shall not bind the Debtors or the Liquidating Trust.

I.      **Approval of Exculpation and Injunction Provisions**

11.     The exculpation and injunction provisions set forth in Article IX of the

Plan are approved and authorized in all respects, are incorporated herein in their entirety, are so

ordered, and shall be immediately effective on the Effective Date of the Plan without further

order or action on the part of this Court, any of the parties to covenants not to sue, exculpation

provisions, injunctions, or any other party.

12.     All injunctions or stays in effect in the Chapter 11 cases pursuant to

sections 105 or 362 of the Bankruptcy Code or any Order of this Court then existing on the

Confirmation Date (excluding any injunctions or stays contained in the Plan or the Order) shall

remain in full force and effect to the maximum extent permitted by law. All injunctions or stays

contained in the Plan or this Order shall remain in full force and effect in accordance with their

terms.

J.      **Binding Effect; Successors and Assigns**

13.     Subject to the terms hereof and notwithstanding Bankruptcy Rules

3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of

the Plan, the Plan Supplement, and this Order shall be immediately effective and enforceable and

deemed binding upon the Debtors, the Estates, the Committee, the Liquidating Trustee, and any

and all Holders of Claims or Equity Interests (regardless of whether such Claims or Equity

Interests are deemed to have accepted or rejected the Plan), all Persons or Entities that are parties

to or are subject to the settlements, compromises, and injunctions described in the Plan, each

Person or Entity acquiring property under the Plan or this Order, and any and all non-Debtor

parties to Executory Contracts and Unexpired Leases with the Debtors. The rights, benefits, and

obligations of any Person or Entity named or referred to in the Plan or this Order shall be binding

15

on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Person or Entity.

**K.      Exemption From Taxation**

14.      To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with, the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**L.      Exemption from Registration**

15.      The beneficial interests in the Liquidating Trust (Plan Article IV) under the Plan are not intended to be 'securities' under applicable law, but if such rights constitute securities, such securities shall be exempt from registration pursuant to section 1145 of the

Bankruptcy Code, as amended, and by other applicable state and local laws requiring registration of securities.

## M.     Matters Concerning Contracts and Leases

16.     The executory contract and unexpired lease provisions of the Plan, including, without limitation, the deemed rejection of executory contracts and unexpired leases pursuant to Article VII of the Plan, are specifically approved in all respects, are incorporated herein in their entirety, and are so ordered.

17.     This Order shall constitute an order of this Court, pursuant to section 365 of the Bankruptcy Code, as of and conditioned on the occurrence of the Effective Date, approving the rejection of any remaining executory contracts and unexpired leases in accordance with Article VII of the Plan.

18.     Claims based on the rejection of executory contracts or unexpired leases pursuant to the Plan (as opposed to a prior order in which such event the bar date applicable to such rejection shall apply) must be filed with the Bankruptcy Court and served on the Debtors and the Liquidating Trustee no later than thirty (30) days after service of notice of the Effective Date.   All Allowed Claims arising from the rejection of prepetition executory contracts or prepetition unexpired leases shall be classified as General Unsecured Claims in Class 3 except as otherwise provided by an Order of this Court.

## N.     Resolution of Disputed Claims

19.     The provisions of Article VI of the Plan regarding the procedures for resolving Disputed Claims shall govern and are fair and reasonable, specifically approved in all respects, are incorporated herein in their entirety, and are so ordered.

20.    Except as expressly provided in the Plan or in any order entered in the Chapter 11 cases prior to the Effective Date (including this Order), no Claim or Equity Interest shall become Allowed unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or this Court has entered a Final Order, including this Order, in these Chapter 11 cases allowing such Claim or Equity Interest.

**O.    Liquidating Trust Distributions**

21.    The provisions of Article V of the Plan regarding distributions from the Liquidating Trust, which are fair and reasonable, shall govern, are specifically approved in all respects, are incorporated herein, and are so ordered.

**P.    Substantive Consolidation**

22.    Substantive consolidation of the Debtors' bankruptcy cases is appropriate based on (i) "the necessity of consolidation due to the interrelationship among the debtors," (ii) "whether the benefits of consolidation outweigh the harm to creditors," and (iii) the "prejudice resulting from not consolidating the debtors." *In re Giller*, 962 F.2d 796, 799 (8th Cir. 1992); *Boellner v. Dowden*, 612 F. App'x 399, 401 (8th Cir. 2015).

23.    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Estates of the Debtors for the purposes of confirming and consummating the Plan, including, without limitation, voting, confirmation, and Distributions.

24.    On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be treated as though they were pooled, (ii) each Claim filed or to be filed against either Debtor, as to which both Debtors are co-liable as a legal or contractual matter, shall be deemed

18

filed as a single Claim against, and a single obligation of, the Debtors, (iii) all Claims held by a Debtor against the other Debtor shall be cancelled or extinguished, (iv) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against the other Debtor, (v) all guarantees of any Debtor of the obligations of the other Debtor shall be eliminated so that any Claim against any Debtor and any Claim based upon a guarantee thereof executed by the other Debtor shall be treated as one Claim against the substantively-consolidated Debtors, and (vi) any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors and any Claims based upon such joint or several liability shall be treated as one Claim against the substantively consolidated Debtors.

   25. The substantive consolidation of the Debtors under the Plan shall not (other than for purposes related to funding Distributions under the Plan) affect (i) the legal and organizational structure of the Debtors, (ii) executory contracts or unexpired leases that were entered into during the Chapter 11 cases or that have been or will be assumed or rejected, (iii) any agreements entered into by the Liquidating Trust on or after the Effective Date, (iv) the Debtors' or the Liquidating Trust's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis, (v) any Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the Estates of the Debtors, and (vi) distributions to the Debtors or the Liquidating Trust from any insurance policies or the proceeds thereof. Notwithstanding the substantive consolidation called for herein, each and every Debtor shall remain responsible for the payment of U.S. Trustee fees pursuant to 28 U.S.C. § 1930 until its particular case is closed, dismissed or converted.

**Q.      Matters Concerning Plan Implementation**

26.      <u>Transfer of Assets to Liquidating Trust Free And Clear</u>. Pursuant to Section IV(B) and (F) of the Plan, Bankruptcy Code § 1141(b), and the terms of this Order, as of the Effective Date the Debtors shall transfer and shall be deemed to have transferred to the Liquidating Trust all of the Debtors' and the Estates' right, title and interest in and to all of the Liquidating Trust Assets, which transfer shall be free and clear of any and all Liens, Claims and interests, except as otherwise specifically provided in the Plan or this Order.

27.      All state and local property, recording, or similar offices shall accept this Order as valid and sufficient proof of any transfer, grant, assignment, conveyance, set over, or delivery described in the preceding paragraphs.

28.      <u>Appointment of Liquidating Trustee</u>. META Advisors LLC is hereby appointed to serve as the initial Liquidating Trustee, on the terms set forth in this Order, Section IV(D) of the Plan, and the Liquidating Trust Agreement, respectively.

29.      <u>Post-Effective Date Reports</u>. After the Effective Date and until the Chapter 11 cases are closed, the filing of quarterly report(s) plus the final report(s) and any subsequent reports required under the U.S. Trustee guidelines shall be the responsibility of the Liquidating Trustee.

30.      <u>Wind Down and Dissolution</u>. The Liquidating Trust shall have the duty, power, and authority to take any action necessary to wind down and dissolve the Debtors in a manner consistent with Section IV(Q) of the Plan. Any expenses and costs incurred by the Liquidating Trust in connection with the wind down and dissolution activities described in the preceding sentence shall be paid solely from the Liquidating Trust Assets.

**R.      Corporate Action**

31.     Except as otherwise provided in the Plan, the corporate or related actions

to be taken by or required of the Debtors in connection with each matter provided for by the Plan

shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the

Plan, and shall be authorized, approved, and, to the extent taken prior to the Effective Date,

ratified in all respects without any requirement of further action by Holders of Claims or Equity

Interests, directors of the Debtors, or any other Entity. On or prior to the Effective Date, the

appropriate officers of the Debtors shall be authorized and directed to issue, execute, and deliver

the agreements, securities, instruments, or other documents contemplated by the Plan, or

necessary or desirable to effect the transactions contemplated by the Plan, in the name of and on

behalf of the Debtors. Notwithstanding any requirements under non-bankruptcy law, the

authorizations and approvals contemplated by this provision shall be effective.

32.     On the Effective Date, upon the appointment of the Liquidating Trustee,

the persons acting as directors, officers and employees of the Debtors prior to the Effective Date,

as the case may be, shall have no further authority, duties, responsibilities, and obligations

relating to or arising from (a) operating the Debtors or (b) the Chapter 11 cases, except as set

forth in the Plan.

**S.      Cancellation and Surrender of Instruments, Securities and Other Documentation**

33.     Except for purposes of evidencing a right to distributions under the Plan,

on the Effective Date, all documents, agreements or instruments evidencing a Claim against or

Equity Interest in the Debtors and the obligations of the Debtors under such documents,

agreements, or instruments evidencing such Claims and Equity Interests, shall be discharged and

neither the Debtors nor the Liquidating Trustee shall have any liability with respect thereto except as set forth in the Plan.

**T.      Immediately Effective Order**

34.      The stay of this Order imposed by Bankruptcy Rule 3020(e) is hereby waived in accordance with Bankruptcy Rule 3020(e), and this Order shall be effective and enforceable immediately upon entry.

**U.      Final Order**

35.      This Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

**V.      Reference to Plan Provisions**

36.      The failure to include or reference specific evidence or particular sections or provisions of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of, or otherwise affect the validity, binding effect and enforceability of, such sections or provisions, it being the intent of this Court that the Plan be confirmed and such related agreements be approved in their entirety.

**W.      Headings**

37.      Headings utilized herein are for convenience and reference only, and shall not constitute a part of the Plan or this Order for any other purpose.

**X.      Automatic Stay**

38.      The automatic stay imposed under section 362 of the Bankruptcy Code is hereby modified solely to the extent necessary to implement the Plan.

**Y.      Notice of Confirmation of the Plan and Effective Date**

39.     Promptly following the occurrence of the Effective Date, pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Liquidating Trustee shall serve a notice of the entry of this Order and the occurrence of the Effective Date on all parties that received notice of the Confirmation Hearing.  Compliance with this provision of this Order shall constitute good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020 and no other or further notice of Confirmation or the occurrence of the Effective Date is necessary.

**Z.      Effect of Non-Occurrence of Conditions to Effective Date**

40.     If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, the Estates, any Holders, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Estates, any Holders, or any other Entity in any respect.

**AA.    Modifications or Amendments to the Plan and Plan Supplement**

41.     Notwithstanding any provision to the contrary in the Plan, the Liquidating Trustee shall create and maintain a separate reserve (the "Reclamation Claimants Reserve") for the benefit of Magpul Industries Corp., SIG Sauer, Inc., Grundens USA Ltd, DQC International Corp., Do-All Traps, LLC, Smith's Consumer Products, Inc., The Wise Company, and Strike King Lure Co. in an amount equal to their Reclamation Claims (as defined in the Amended Order Granting Expedited Relief and Establishing Procedures for the Resolution of Reclamation Claims and Administrative Claims Asserted Pursuant to Section § 503(b)(9) of the Bankruptcy

Code [Docket No. 211]) (each, a "Reclamation Claim") in the aggregate amount of $2,368,401.01 until such time as each Reclamation Claim is (i) Allowed and paid, (ii) disallowed by Final Order, or (iii) otherwise resolved by Final Order of the Bankruptcy Court or agreement of the applicable claimant and the Liquidating Trustee.  Upon the occurrence of (i), (ii) or (iii), the Reclamation Claimants Reserve may be reduced by the amount of the applicable Reclamation Claim resolved thereby.  The Liquidating Trustee and the estate reserve all claims and defenses relating to all Reclamation Claims and shall not be deemed to have waived any claim or defense by establishing the Reclamation Claimants Reserve.

42.    The last sentence of Section V(K) of the Plan shall be replaced in its entirety by the following: "Notwithstanding any provision in the Plan to the contrary, nothing herein shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code, if applicable; provided, however, that such setoff or recoupment rights are timely asserted or asserted in connection with a non-residential real property lease; provided further that all rights of the Debtors, the Estates and the Liquidating Trustee with respect thereto are reserved."

43.    Notwithstanding anything to the contrary in the Plan or this Order, subject to the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors are authorized to alter, amend, or modify the Plan one or more times, after Confirmation in accordance with Article XI of the Plan. A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

**BB.    Retention of Jurisdiction**

44.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Order and the occurrence of the Effective Date, as provided in Article X of the Plan, this Court shall retain jurisdiction as provided in the Plan over all matters arising out of, or related to, these Chapter 11 cases, the Debtors, the Liquidating Trust, and the Plan, to the fullest extent permitted by applicable laws.

**CC.    Closing the Chapter 11 Cases**

45.    The Liquidating Trustee shall seek authority from this Court to close the Chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

Dated:    *January 26, 2018*

*/e/ Michael E. Ridgway*

MICHAEL E. RIDGWAY
UNITED STATES BANKRUPTCY JUDGE

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *01/26/2018*
Lori Vosejpka, Clerk, by MJS

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| In re: | Jointly Administered Under<br>Case No. 17-30673 (MER) |
| Gander Mountain Company,<br>Overton's, Inc., | Case No. 17-30673<br>Case No. 17-30675 |
| Debtors. | Chapter 11 Cases |

---

**DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT**
**PLAN OF LIQUIDATION DATED OCTOBER 31, 2017**

---

# TABLE OF CONTENTS

**Page**

**ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION** ............................ 1

    **A.**    **Defined Terms** ................................................................................ 1

    **B.**    **Rules of Interpretation** ................................................................ 10

    **C.**    **Exhibits** .......................................................................................... 11

**ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS** ........................................... 11

    **A.**    **Establishment of the Administrative Claim Bar Date** ................... 11

    **B.**    **Administrative Claims** .................................................................. 12

    **C.**    **Professional Compensation and Reimbursement Claims** ................ 12

    **D.**    **Priority Tax Claims** ..................................................................... 12

    **E.**    **Other Priority Claims** .................................................................. 12

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
EQUITY INTERESTS** .............................................................................. 13

    **A.**    **Summary** ....................................................................................... 13

    **B.**    **Classification and Treatment of Claims and Equity Interests** ....... 14

    **C.**    **Special Provision Governing Unimpaired Claims** ......................... 15

    **D.**    **Nonconsensual Confirmation** ....................................................... 15

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** .................................. 15

    **A.**    **Substantive Consolidation** ............................................................ 15

    **B.**    **Establishment of Liquidating Trust** .............................................. 16

    **C.**    **Liquidating Trust Advisory Committee** ......................................... 17

    **D.**    **Appointment of the Liquidating Trustee** ....................................... 17

    **E.**    **Beneficiaries of Liquidating Trust** ............................................... 17

    **F.**    **Vesting and Transfer of Liquidating Trust Assets to the Liquidating
Trust** .......................................................................................... 18

    **G.**    **Liquidating Trust Expenses** .......................................................... 18

    **H.**    **Role of the Liquidating Trustee** .................................................... 18

    **I.**    **Prosecution and Resolution of Causes of Action** ........................... 19

    **J.**    **Federal Income Tax Treatment of the Liquidating Trust for the
Liquidating Trust Assets** .............................................................. 20

    **K.**    **Limitation of Liability** ................................................................. 20

    **L.**    **Indemnification of Liquidating Trustee** ........................................ 21

    **M.**    **Term of Liquidating Trust** ........................................................... 21

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| N. | **Retention of Professionals by Liquidating Trust** | 22 |
| O. | **Conflicts Between the Liquidating Trust Agreement and the Plan** | 22 |
| P. | **Cancellation of Existing Securities and Agreements** | 22 |
| Q. | **Operations of the Debtors Between the Confirmation Date and the Effective Date and Dissolution Thereafter** | 22 |
| R. | **Automatic Stay** | 23 |
| S. | **The Creditors' Committee** | 23 |
| T. | **Books and Records** | 23 |
| U. | **D&O Insurance Policies** | 24 |

**ARTICLE V. PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS** ... **24**

| | | |
|---|---|---|
| A. | **Voting of Claims** | 24 |
| B. | **Distribution Dates** | 25 |
| C. | **Record Date for Distributions** | 25 |
| D. | **Delivery of Distributions** | 26 |
| E. | **Undeliverable and Unclaimed Distributions** | 26 |
| F. | **Manner of Cash Payments Under the Plan** | 26 |
| G. | **Compliance with Tax Requirements** | 26 |
| H. | **No Payments of Fractional Dollars** | 27 |
| I. | **Interest on Claims** | 27 |
| J. | **No Distribution in Excess of Allowed Amount of Claim** | 27 |
| K. | **Setoff and Recoupment** | 28 |
| L. | **Charitable Donation** | 28 |
| M. | **U.S. Trustee Fees** | 28 |
| N. | **Withholding from Distributions** | 28 |
| O. | **No Distributions on Late-Filed Claims** | 28 |

**ARTICLE VI. DISPUTED CLAIMS** ... **29**

| | | |
|---|---|---|
| A. | **Resolution of Disputed Claims** | 29 |
| B. | **Objection Deadline** | 29 |
| C. | **Estimation of Claims** | 29 |
| D. | **No Distributions Pending Allowance** | 30 |

## TABLE OF CONTENTS
### (continued)

**Page**

E.      Resolution of Claims ........................................................................... 30

**ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES** ................................................................... **30**

A.      Assumption or Rejection of Executory Contracts and Unexpired
Leases ............................................................................................... 30

B.      Cure of Defaults .............................................................................. 30

C.      Claims Based on Rejection of Executory Contracts and Unexpired
Leases ............................................................................................... 31

D.      Indemnification and Reimbursement ............................................ 31

**ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ................. **32**

A.      Conditions Precedent ....................................................................... 32

B.      Waiver .............................................................................................. 32

**ARTICLE IX. INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED
PROVISIONS** ................................................................................. **32**

A.      Compromise and Settlement ........................................................... 32

B.      Releases ............................................................................................ 33

C.      Exculpation ...................................................................................... 33

D.      Preservation of Causes of Action ................................................... 34

E.      Injunction ......................................................................................... 35

F.      Releases of Liens .............................................................................. 36

**ARTICLE X. RETENTION OF JURISDICTION** ................................................ **36**

**ARTICLE XI. MISCELLANEOUS PROVISIONS** ............................................... **37**

A.      Modification of Plan ........................................................................ 37

B.      Revocation of Plan ........................................................................... 38

C.      Binding Effect .................................................................................. 38

D.      Successors and Assigns ................................................................... 38

E.      Governing Law ................................................................................. 38

F.      Reservation of Rights ...................................................................... 39

G.      Article 1146 Exemption ................................................................... 39

H.      Section 1125(e) Good Faith Compliance ........................................ 39

I.      Further Assurances .......................................................................... 39

# TABLE OF CONTENTS

(continued)

**Page**

**J.**     **Service of Documents**............................................................................................. 39

**K.**     **Filing of Additional Documents**...................................................................... 40

**L.**     **No Stay of Confirmation Order**........................................................................ 40

**DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The Debtors and the Official Committee of Unsecured Creditors in the above-captioned cases hereby respectfully propose the following Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code.[1]

## ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

**A.    Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

**1.**    "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees, or expenses Allowed or awarded by a Final Order of the Bankruptcy Court) for legal, financial advisory, accounting, liquidation, and other professional services and reimbursement of expenses of such Professionals that are awardable and allowable under sections 328, 330(a), 331, or 363 of the Bankruptcy Code, or otherwise rendered prior to the Effective Date, including in connection with (a) applications filed pursuant to sections 330, 331, and 363 of the Bankruptcy Code; (b) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (c) applications for allowance of Administrative Claims arising under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(6) of the Bankruptcy Code.  To the extent the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

**2.**    "*Administrative Claims*" means (i) Claims that have been timely filed before the Administrative Claim Bar Date, pursuant to the deadline and procedure set forth in the Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation: the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises), (ii) Twenty Day Claims, and (iii) Claims timely asserted for stub rental payments under the Debtors' leases.  Any fees or charges assessed against the Estates

---

[1] All capitalized terms not otherwise defined herein shall be subject to the definition of such capitalized terms in Article I.A. hereof.

under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Article V.M of the Plan.  Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.

**3.**     "*Administrative Claim Bar Date*" means the first Business Day that is thirty (30) days after the Effective Date and is the deadline for a holder of an Administrative Claim who was not required to file an Administrative Claim pursuant to the Twenty Day Claim Bar Date Order on account of such Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim in the manner indicated in Article II herein.

**4.**     "*Administrative Claims Reserve*" means the amount of Cash required to satisfy Administrative Claims not otherwise satisfied prior to the Effective Date in accordance with the terms of the Plan.

**5.**     "*Allowed*" means, with respect to any Claim against the Debtors, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors in their Schedules filed in the Chapter 11 Cases as other than Disputed, contingent, or unliquidated and as to which the Debtors or other parties-in-interest have not filed an objection by the Claims Objection Bar Date; (b) a Claim filed in the Chapter 11 Cases and that either is not Disputed or has been allowed by a Final Order; (c) a Claim filed in the Chapter 11 Cases that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation or written agreement with the Liquidating Trustee, of amount and nature of Claim executed on or after the Effective Date; or (iii) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (d) a Claim that is allowed pursuant to the terms of this Plan; (e) a Twenty Day Claim (i) in the amount identified by the Debtors as valid on the *Notice of Statement of Reclamation and Twenty Day Claims* [Docket No. 1242] to which a timely objection has not been filed; or (ii) as otherwise allowed pursuant to the procedures established by the Twenty Day Claim Bar Date Order; or (f) a Disputed Claim that the Debtors and/or Liquidating Trustee (as applicable) ultimately determine will not be objected to (such Claim being deemed Allowed at the time such determination is made).

**6.**     "*Bankruptcy Code*" means Articles 101 et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

**7.**     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Minnesota.

**8.**     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules, the Local Rules of Civil Practice and Procedure of the U.S. District Court for the District of Minnesota, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

9.     "*Books and Records*" means, with respect to the Debtors, all books and records of such Debtor(s), including, without limitation, all documents and communications of any kind, whether physical or electronic.

10.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

11.     "*Cash*" means cash and cash equivalents in certified or immediately available U.S. funds, including, without limitation, bank deposits, checks, and similar items.

12.     "*Causes of Action*" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions against any Person or Entity, based in law or equity, including, without limitation, under the Bankruptcy Code), whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

13.     "*Chapter 11 Cases*" means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date and with the following case numbers: 17-30673-MER and 17-30675-MER, which are jointly administered under case number 17-30673-MER.

14.     "*Claim*" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or (c) any other claim, as such term is defined in section 101(5) of the Bankruptcy Code.

15.     "*Claims Objection Bar Date*" means the bar date for objecting to proofs of Claim, which shall be one hundred twenty (120) days after the Effective Date; provided, however, that the Debtors and/or the Liquidating Trustee may seek extensions of this date from the Bankruptcy Court, with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

16.     "*Class*" means a category of holders of Claims or Equity Interests as set forth in Article III herein and pursuant to section 1122(a) of the Bankruptcy Code.

17.     "*Class 3 Ballot*" means the ballot accompanying the Confirmation Hearing Notice sent to holders of General Unsecured Claims classified in Class 3 as set forth in Article III herein on which the holders of such General Unsecured Claims shall, among other things, indicate their acceptance or rejection of this Plan in accordance with this Plan and the procedure governing the solicitation process.

**18.**     "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

**19.**     "*Confirmation Hearing Notice*" means the notice for hearing on confirmation of the Plan approved by the Court containing, among other things, (a) instructions for how to access the Plan and Disclosure Statement, (b) the voting deadline, and (c) the date set for the hearing on confirmation of the Plan.

**20.**     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**21.**     "*Convenience Class Ballot*" means the ballot accompanying the Confirmation Hearing Notice sent to holders of Convenience Class Claims on which holders of Convenience Class Claims shall indicate their acceptance or rejection of this Plan in accordance with this Plan and the procedures governing the solicitation process.

**22.**     "*Convenience Class Claim*" means a Claim of a single holder of a type that would otherwise be included in Class 3 as a General Unsecured Claim that is either (a) $100 or less in the aggregate or (b) greater than $100 in the aggregate, but as to which the holder thereof has made a Convenience Class Election.

**23.**     "*Convenience Class Election*" means the election on the Class 3 Ballot to have the General Unsecured Claim originally classified in Class 3 (a) reduced to the amount of $100, (b) re-classified in Class 2, and (3) treated as a Convenience Class Claim.

**24.**     "*Creditor*" shall have the meaning in section 101(10) of the Bankruptcy Code.

**25.**     "*Creditors' Committee*" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the U.S. Trustee.

**26.**     "*D&O Insurance Policies*" means all primary and excess insurance policies of the Debtors that provide for, among other things, coverage for liability related to the actions or omissions of the Debtors' directors and officers.

**27.**     "*Debtors*" means collectively, Gander Mountain Company and Overton's, Inc. and where applicable, as debtors-in-possession in these Chapter 11 Cases and the Estates thereof.

**28.**     "*Designation Rights Agreement*" means that certain Designation Rights Agreement entered by and between the Debtors as merchant and CWI, Inc., as agent, executed in connection with the Joint Venture Sale.

**29.**     "*Designation Rights Deadline*" means October 6, 2017, as established in the Designation Rights Agreement.

**30.**     "*DIP Agent*" has the meaning set forth in the DIP Orders.

**31.**     "*DIP Credit Agreement*" has the meaning set forth in the DIP Orders.

32.     "*DIP Credit Party*" has the meaning set forth in the DIP Orders.

33.     "*DIP Loan Documents*" has the meaning set forth in the DIP Orders.

34.     "*DIP Orders*" means the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Granting Expedited Relief, (II) Approving Postpetition Financing, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Authorizing Use of Cash Collateral, (V) Granting Adequate Protection, (VI) Modifying Automatic Stay, and (VII) Granting Related Relief* [Docket No. 89]; the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Approving Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 443]; and the *Order Amending Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Approving Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 712].

35.     "*Disclosure Statement*" means the *Disclosure Statement for the Debtors' Plan of Liquidation under Chapter 11 of the Bankruptcy Code Dated October 31, 2017*, prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and approved by the Bankruptcy Court, as amended, supplemented, or modified from time to time.

36.     "*Disputed*" means, with respect to any Claim: (a) listed on the Schedules as unliquidated, disputed, or contingent, unless a proof of Claim has been filed in a liquidated, non-contingent amount; (b) as to which the Debtors, the Liquidating Trustee, or any other party in interest, has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed in accordance with applicable bankruptcy or insolvency law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order, including, without limitation, all Reclamation Claims and Twenty Day Claims listed on the *Notice of Statement of Reclamation and Twenty Day Claims* [Docket No. 1242] to which a timely objection has been filed.

37.     "*Distributions*" means the distributions of Cash to be made in accordance with the Plan.

38.     "*Effective Date*" means the first Business Day after the Confirmation Date on which the conditions precedent specified in Article VIII of this Plan have been either satisfied or waived.  Within five (5) Business Days of the Effective Date, notice of the Effective Date shall be filed in the Bankruptcy Court.

39.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

40.     "*Equity Interest*" means any equity interest in a Debtor that existed immediately prior to the Petition Date.

**41.** "*Estates*" means the Debtors' estates created pursuant to section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases.

**42.** "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

**43.** "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to file an appeal, motion for reconsideration or rehearing, or request for a stay has expired with no appeal, motion for reconsideration or rehearing, or request for a stay having been timely filed.

**44.** "*General Bar Date*" means July 17, 2017 as established in the *Notice of Chapter 11 Bankruptcy Cases* [Docket No. 183].

**45.** "*General Unsecured Claims*" means Claims against any Debtor that are not Administrative Claims, Accrued Professional Compensation Claims, Secured Claims, Priority Tax Claims, Other Priority Claims, or Equity Interests.

**46.** "*Impaired*" means "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

**47.** "*Indemnified Persons*" means the Liquidating Trustee and its employees, officers, directors, agents, Representatives, and Professionals.

**48.** "*Initial GOB Sale*" means the store closing sales conducted by a joint venture between Tiger Capital Group, LLC and Great American Group, LLC as the Debtors' liquidating agent, at thirty-two (32) of the Debtors' store locations identified in, and in accordance with, the *Final Order: (I) Authorizing the Debtors to Enter Into the Store Closing Agreement with Liquidation Consultant, (II) Approving the Debtors' Store Closing Plan, (III) Authorizing and Approving Store Closing Sales Free and Clear of All Liens, Claims and Encumbrances, (IV) Exempting the Debtors from Complying with Non-Bankruptcy Liquidation Laws, (V) Exempting the Debtors from Complying With Any Contractual Restrictions Placed Upon the Closing Sales; and (VI) Permitting the Debtors to Abandon Any Property That is Burdensome or of Inconsequential Value* [Docket No. 444, as amended at Docket No. 776].

**49.** "*Joint Venture Sale*" means the transaction including (i) the store closing sales conducted by a joint venture among Tiger Capital Group, LLC, Great American Group WF, LLC, Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC as the Debtors' liquidating agent, at the Debtors' stores not subject to the Initial GOB Sale, in accordance with the *Order Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests* [Docket No. 688] and (ii) the sale to CWI, Inc. as purchaser of certain assets of the Debtors, including the right to act as the Debtors' agent for the purpose of assigning and transferring the Debtors' unexpired real property leases, in accordance with the *Order Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests* [Docket No. 691].

**50.** "*Lien*" shall mean any lien, mortgage, charge, security interest, pledge, or other encumbrance against or interest in property to secure payment or performance of a claim, debt, or litigation.

**51.** "*Liquidating Trust*" means the grantor trust to be created upon the Effective Date for the benefit of its beneficiaries, as set forth in Article IV.B.

**52.** "*Liquidating Trust Advisory Committee*" means the committee formed in accordance with Article IV.C herein and which shall direct the Liquidating Trustee to carry out its powers in accordance with the Plan and Confirmation Order.

**53.** "*Liquidating Trust Agreement*" means the agreement, substantially in the form included in the Plan Supplement, governing the operations of the Liquidating Trust, as it may be subsequently modified from time to time.

**54.** "*Liquidating Trust Assets*" means the assets held in the Liquidating Trust comprised of (i) all Causes of Action of the Debtors, including, without limitation, any and all Causes of Action for which the Creditors' Committee was granted standing and authority to prosecute, resolve, settle, and compromise in the Chapter 11 Cases, but excluding those expressly waived herein, and (ii) all other unencumbered assets of the Debtors' Estates remaining after all required payments have been made pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, as applicable, on the Effective Date.

**55.** "*Liquidating Trust Distributable Cash*" means the Cash and any other assets of the Liquidating Trust reduced to Cash net of all expenses and costs of operating or effectuating the duties of the Liquidating Trust and establishing any reserves as the Liquidating Trustee may determine is necessary in its sole discretion pursuant to the terms of this Plan and the Liquidating Trust Agreement, including, without limitation, the Secured Claims Reserve, the Administrative Claims Reserve, the Priority Tax Claims Reserve, and the Other Priority Claims Reserve.

**56.** "*Liquidating Trustee*" means the individual or entity designated and retained as the trustee to the Liquidating Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust.

**57.** "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the U.S. Bankruptcy Court for the District of Minnesota

**58.** "*Noticing Agent*" means Donlin, Recano & Company, Inc., the Bankruptcy Court appointed noticing agent in the Chapter 11 Cases.

**59.** "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

**60.** "*Other Priority Claims Reserve*" means the amount of Cash required to satisfy Other Priority Claims not otherwise satisfied prior to the Effective Date in accordance with the terms of the Plan.

**61.**      "*Person*" means an individual, partnership, corporation, limited liability company, cooperative, trust, estate, unincorporated organization, association, joint venture, government unit or agency, or political subdivision thereof or any other form of legal entity or enterprise.

**62.**      "*Petition Date*" means March 10, 2017, the date on which the Debtors filed the Chapter 11 Cases.

**63.**      "*Plan*" means this Debtors' and Official Committee of Unsecured Creditors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Dated October 31, 2017, including exhibits and supplements, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code or the Bankruptcy Rules.

**64.**      "*Plan Proponents*" means the Debtors and the Creditors' Committee.

**65.**      "*Plan Supplement*" means the supplement to the Plan containing certain documents and forms of documents specified in the Plan, which documents and forms shall be filed with the Bankruptcy Court no later than ten (10) days prior to the commencement of the hearing on confirmation of the Plan.

**66.**      "*Prepetition ABL Agent*" has the meaning set forth in the DIP Orders.

**67.**      "*Prepetition ABL Credit Agreement*" has the meaning set forth in the DIP Orders.

**68.**      "*Prepetition ABL Credit Documents*" has the meaning set forth in the DIP Orders.

**69.**      "*Prepetition ABL Lenders*" has the meaning set forth in the DIP Orders.

**70.**      "*Prepetition Term Loan Agent*" has the meaning set forth in the DIP Orders.

**71.**      "*Prepetition Term Loan Agreement*" has the meaning set forth in the DIP Orders.

**72.**      "*Prepetition Term Loan Documents*" has the meaning set forth in the DIP Orders.

**73.**      "*Prepetition Term Loan Lenders*" has the meaning set forth in the DIP Orders.

**74.**      "*Priority Tax Claims*" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

**75.**      "*Priority Tax Claims Reserve*" means the amount of Cash required to satisfy Priority Tax Claims not otherwise satisfied prior to the Effective Date in accordance with the terms of the Plan.

**76.**      "*Procedures Motion*"  means the Notice of Hearing and Motion for an Order (I) Further Authorizing Donlin, Recano & Company, Inc. to Act as Balloting Agent; (II) Approving Solicitation Packages and Distribution Procedures, Including the Confirmation Hearing Notice; (III) Approving Ballot Forms and Plan Voting Procedures; (IV) Approving Forms of Notices to Non-Voting Classes under the Plan; (V) Fixing the Voting Deadline to

Accept or Reject the Plan; and (VI) Approving Procedures for Vote Tabulations that shall be filed in conjunction with the Plan and Disclosure Statement.

**77.** "*Pro Rata*" shall mean the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims (including Disputed Claims, but excluding disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

**78.** "*Professionals*" means any Person employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

**79.** "*Reclamation Claims*" means claims timely asserted by sellers of goods asserting purported rights of reclamation pursuant to section 2-702(2) of the Uniform Commercial Code and section 546(c) of the Bankruptcy Code pursuant to the deadline and procedure set forth in the Twenty Day Claims Bar Date Order.

**80.** "*Record Date*" means the date that the Disclosure Statement is approved by the Bankruptcy Court.

**81.** "*Released Parties*" means, collectively, the Debtors, the Debtors' current and former directors and officers, the Debtors' Professionals, the members of the Creditors' Committee (solely in their capacity as members of the Creditors' Committee), the Creditors' Committee's Professionals, and the current and former Representatives of each of the foregoing.

**82.** "*Representatives*" means, with regard to an Entity (including the Debtors), any current or former officers, directors, employees, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents, and other representatives (including their respective officers, directors, employees, independent contractors, members, and professionals).

**83.** "*Sales*" means (i) the Initial GOB Sale, and (ii) the Joint Venture Sale.

**84.** "*Schedules*" means the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as may be amended, modified, or supplemented from time to time.

**85.** "*Secured Claims*" means Claim(s) against the Debtors that are secured by a Lien on property in which the Estates have an interest, which Liens are valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**86.** "*Secured Claims Reserve*" means the amount of Cash required to satisfy Secured Claims not otherwise satisfied prior to the Effective Date in accordance with the terms of the Plan.

87.	"*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

88.	"*Tax Returns*" means all federal, state and local tax returns, reports, certificates, forms, or similar statements or documents, including, without limitation, amended tax returns or requests for refunds.

89.	"*Twenty Day Claim Bar Date*" means May 22, 2017, as established by the Twenty Day Claim Bar Date Order.

90.	"*Twenty Day Claim Bar Date Order*" means the *Order Granting Expedited Relief and Establishing Procedures for the Resolution of Reclamation Claims and Administrative Claims Asserted Pursuant to Section 503(b)(9) of the Bankruptcy Code* [Docket No. 100, as amended at Docket No. 211].

91.	"*Twenty Day Claims*" means claims timely asserted by sellers of goods asserting purported rights under section 503(b)(9) of the Bankruptcy Court pursuant to the deadline and procedure set forth in the Twenty Day Claims Bar Date Order.

92.	"*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the District of Minnesota.

93.	"*Unimpaired*" means not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

94.	"*Voting Deadline*" means the date set by the Bankruptcy Court that will serve as the deadline that Convenience Class Ballots and Class 3 Ballots must be received by the Noticing Agent in order to be counted in the tabulation of the ballots.

## B.	Rules of Interpretation

1.	For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**2.** The provisions of Federal Rule of Bankruptcy Procedure 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

**3.** All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## C.    Exhibits

All exhibits and schedules, if any, to the Plan are incorporated into and are part of the Plan as if set forth herein.  All exhibits and schedules to the Plan shall be filed with the Clerk of the Bankruptcy Court not later than seven (7) days prior to the deadline set by the Bankruptcy Court to vote to accept or reject the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court or on the website of the Debtors' Noticing Agent at https://www.donlinrecano.com/clients/gmc/index. Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtors' Noticing Agent by a written request sent to the following address:

> Donlin, Recano & Company, Inc.
> Re: Gander Mountain Company, et al.
> P.O. Box 199043
> Blythebourne Station
> Brooklyn, NY 11219,

by calling, toll free, the Debtors' case information hotline at 1-800-591-8236, or by emailing the Noticing Agent at Balloting@DonlinRecano.com.

## ARTICLE II.

## ADMINISTRATIVE AND PRIORITY CLAIMS

### A.    Establishment of the Administrative Claim Bar Date

**1.** The holder of an Administrative Claim, other than claimants asserting a Claim arising under section 2-702(2) of the Uniform Commercial Code and section 546(c) and/or section 503(b)(9) of the Bankruptcy Code (which must have been submitted by the Twenty Day Claim Bar Date in accordance with the Twenty Day Claims Order), must file and serve on the Liquidating Trustee a request for payment of such Administrative Claim so that it is received no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order.  All such requests shall be made by filing and serving a proof of claim form substantially in the form of official form 410.  **Holders required to file and serve, who fail to file and serve, a request for payment of Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtors and their property, and such Administrative Claim shall be deemed discharged as of the Effective Date.**  Nothing in this Plan alters, extends, or modifies Twenty Day Claim Bar Date, as established by the Twenty Day Claim Bar Date Order.

**2.** Notwithstanding anything herein, the Debtors' Professionals and the Creditors' Committee's Professionals shall not be required to file a request for payment of any Administrative Claim on or before the Administrative Claim Bar Date for fees and expenses arising under sections 330, 331 or 503(b)(2-5) of the Bankruptcy Code, as such Professionals will instead file final fee applications as required by the Bankruptcy Code, Bankruptcy Rules, and the Confirmation Order.

## B.    Administrative Claims

The Liquidating Trustee shall pay each holder of an Allowed Administrative Claim, in satisfaction of such Allowed Administrative Claim, the full unpaid amount of such Allowed Administrative Claim in Cash from the Administrative Claims Reserve: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (3) at such time and upon such terms as may be agreed upon by such holder and the Liquidating Trustee; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

## C.    Professional Compensation and Reimbursement Claims

The deadline for submission by Professionals for Bankruptcy Court approval of Accrued Professional Compensation shall be sixty (60) days after the Effective Date. Any Professional or other Person or Entity that is required to file and serve a request for approval of Accrued Professional Compensation and fails to timely file and serve such request on or before such date shall be forever barred, estopped, and enjoined from asserting such request or participating in Distributions under the Plan on account thereof. All Professionals employed by the Debtors or the Creditors' Committee shall provide to the Debtors an estimate of their Accrued Professional Compensation through the Effective Date (including an estimate for fees and expenses expected to be incurred after the Effective Date to prepare and prosecute allowance of final fee applications) before the Effective Date.

## D.    Priority Tax Claims

The Liquidating Trustee shall pay each holder of an Allowed Priority Tax Claim, in satisfaction of such Allowed Priority Tax Claim, the full unpaid amount of such Allowed Priority Tax Claim in Cash from the Priority Tax Claims Reserve, on or as soon as practicable after the latest of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law; provided, however that the Liquidating Trustee shall not pay any premium, interest, or penalty in connection with such Allowed Priority Tax Claim.

## E.    Other Priority Claims

The Liquidating Trustee shall pay each holder of an Allowed Other Priority Claim, in satisfaction of such Allowed Other Priority Claim, the full unpaid amount of such Allowed Other Priority Claim in Cash from the Other Priority Claims Reserve, on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such Allowed Other Priority Claim

becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Other Priority Claim is payable under applicable non-bankruptcy law.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.    Summary**

1.    As set forth in Article V.1, below, the Plan provides for the substantive consolidation of the Estates of the Debtors for the purposes of confirming and consummating the Plan, including, without limitation, voting, confirmation, and Distributions.

2.    In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims, and Other Priority Claims, as described in Article II.

3.    In light of the retention of the Debtor's prepaid D&O Insurance Policies, any Claims of the Debtors' directors, officers, and employees for indemnification against the Debtors for which such director, officer, or employee is entitled to payment from the D&O Insurance Policies shall be disallowed to the extent of any coverage and shall not be entitled to receive any distribution in accordance with the terms of this Plan.

4.    The following table classifies Claims against and Equity Interests in the Debtors for all purposes, including, without limitation, voting, confirmation, and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

5.    Summary of Classification and Treatment of Classified Claims and Equity Interests.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Convenience Class Claims | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Equity Interests | Impaired and No Distribution | Deemed to Reject |

13

**B.** **Classification and Treatment of Claims and Equity Interests**

**1.** **Secured Claims (Class 1)**

(a) **Classification:** Class 1 consists of all Secured Claims.

(b) **Treatment:** Except to the extent that a holder of an Allowed Secured Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable classification and treatment, each holder of an Allowed Secured Claim shall receive, at the sole option of the Liquidating Trustee, Cash from the Secured Claims Reserve in the full amount of such Allowed Secured Claim or the collateral securing its Allowed Secured Claim, on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Claim becomes an Allowed Secured Claim; and (iii) the date or dates agreed to by the Liquidating Trustee and the holder of the Allowed Secured Claim.

(c) **Voting:** Class 1 is Unimpaired and, therefore, holders of Secured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

**2.** **Convenience Class Claims (Class 2)**

(a) **Classification:** Class 2 consists of Convenience Class Claims.

(b) **Treatment:** Except to the extent that a holder of an Allowed Convenience Class Claim has been paid by the Debtors prior to the Effective Date, including by the redemption of a gift card during the Sales, or agrees to less favorable classification and treatment, each holder of an Allowed Convenience Class Claim shall receive a one-time cash payment of the lesser of (a) $5 or (b) the value of the Allowed Convenience Class Claim. Any Convenience Class Claims that are Allowed as of the Effective Date shall be paid by the Liquidating Trustee within 90 days after the Effective Date. Any Convenience Class Claims Allowed after the Effective Date shall be paid by the Liquidating Trustee as soon as practicable as the Liquidating Trustee may determine in its sole discretion.

(c) **Voting:** Class 2 is Impaired and, therefore, holders of Convenience Class Claims are entitled to vote to accept or reject the Plan.

**3.** **General Unsecured Claims (Class 3)**

(a) **Classification:** Class 3 consists of General Unsecured Claims.

(b) **Treatment:** Except to the extent that a holder of an Allowed General Unsecured Claim (i) has been paid by the Debtors prior to the Effective Date; (ii) elects to have its Claim classified as a Convenience Class Claim; or (iii) agrees to some other less favorable classification and treatment, each holder of an Allowed General Unsecured Claim shall receive their Pro Rata share of the interests in the Liquidating Trust deemed issued on account of Liquidating Trust Assets on the Effective Date, representing the right of a holder to receive Distributions of Liquidating Trust Distributable Cash from the

14

Liquidating Trust.  Distributions to holders of Allowed General Unsecured Claims shall be made as soon as practicable as the Liquidating Trustee may determine in its sole discretion.

(c)     **Voting:**  Class 3 is Impaired and, therefore, holders of General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Plan.

**4.     Equity Interests (Class 4)**

(a)     **Classification:**  Class 4 consists of Equity Interests.

(b)     **Treatment:**  Class 4 is Impaired and will receive no Distribution under the Plan.  All equity interests/shares of stock in Gander Mountain Company and Overton's Inc. shall be deemed cancelled upon the Effective Date.

(c)     **Voting:**  Class 4 will receive no Distribution under the Plan and therefore, holders of Equity Interests in Class 4 are deemed to have rejected the Plan and are not entitled to vote on the Plan.

**C.     Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim.

**D.     Nonconsensual Confirmation**

If any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126 of the Bankruptcy Code, the Debtors reserve the right to amend the Plan or to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.  With respect to Impaired Classes that are deemed to reject the Plan, the Debtors intend to request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by such Class of Claims.

**ARTICLE IV.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.     Substantive Consolidation**

**1.**     The Plan and Disclosure Statement, jointly, incorporate the Debtors' *Motion for Substantive Consolidation of the Debtors' Assets, Liabilities, and Operations* [Docket No. 478]. The Plan contemplates and is predicated upon the Confirmation Order substantively consolidating the Debtors' Estates and the Chapter 11 Cases as set forth herein.

15

2.      Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Estates of the Debtors for the purposes of confirming and consummating the Plan, including, without limitation, voting, confirmation, and Distributions.

3.      On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be treated as though they were pooled, (ii) each Claim filed or to be filed against either Debtor, as to which both Debtors are co-liable as a legal or contractual matter, shall be deemed filed as a single Claim against, and a single obligation of, the Debtors, (iii) all Claims held by a Debtor against the other Debtor shall be cancelled or extinguished, (iv) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against the other Debtor, (v) all guarantees of any Debtor of the obligations of the other Debtor shall be eliminated so that any Claim against any Debtor and any Claim based upon a guarantee thereof executed by the other Debtor shall be treated as one Claim against the substantively-consolidated Debtors, and (vi) any joint or several liability of any of the Debtors shall be one obligation of the substantively-consolidated Debtors and any Claims based upon such joint or several liability shall be treated as one Claim against the substantively consolidated Debtors.

4.      The substantive consolidation of the Debtors under the Plan shall not (other than for purposes related to funding Distributions under the Plan) affect (i) the legal and organizational structure of the Debtors, (ii) executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected, (iii) any agreements entered into by the Liquidating Trust on or after the Effective Date, (iv) the Debtors' or the Liquidating Trust's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis, (v) any Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the Estates of the Debtors, and (vi) distributions to the Debtors or the Liquidating Trust from any insurance policies or the proceeds thereof. Notwithstanding the substantive consolidation called for herein, each and every Debtor shall remain responsible for the payment of U.S. Trustee fees pursuant to 28 U.S.C. § 1930 until its particular case is closed, dismissed or converted.

**B.      Establishment of Liquidating Trust**

On the Effective Date, the Debtors and the Liquidating Trustee shall enter into the Liquidating Trust Agreement. Additionally, on the Effective Date, the Debtors irrevocably shall transfer and shall be deemed to have transferred to the Liquidating Trust all right, title and interest in and to the Liquidating Trust Assets in accordance with the Plan, including, without limitation, Article IV.F thereof. In his, her, or its capacity as Liquidating Trustee, the Liquidating Trustee shall accept all Liquidating Trust Assets on behalf of the beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Liquidating Trust Assets not in his, her, or its possession. The Liquidating Trust will be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date. The Liquidating Trust shall be established for the purposes of (i) collecting and liquidating the Liquidating Trust Assets; (ii) prosecuting and resolving the Causes of Action; (iii) maximizing recovery of the Liquidating Trust Assets for the benefit of the beneficiaries thereof; and (iv) distributing the proceeds of the Liquidating Trust Assets to the beneficiaries in

accordance with this Plan and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidating Trust.

## C.    Liquidating Trust Advisory Committee

The Liquidating Trust Advisory Committee shall be a three member committee established under the Liquidating Trust Agreement and the members of the Liquidating Trust Advisory Committee shall be designated by, and selected from, the Creditors' Committee. The Liquidating Trust Advisory Committee shall provide input to the Liquidating Trustee on certain matters, and shall have certain rights and authority as set forth in the Liquidating Trust Agreement. All fees and expenses incurred by the Liquidating Trust Advisory Committee shall be paid from the Liquidating Trust Assets. The Liquidating Trust Advisory Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities hereunder have concluded. Unless earlier dissolved, the Liquidating Trust Advisory Committee shall be dissolved as of the date the Chapter 11 Cases are closed.

## D.    Appointment of the Liquidating Trustee

The Liquidating Trustee shall be appointed by the Creditors' Committee, in consultation with the Debtors, and the appointment shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. Following appointment, the Liquidating Trustee shall act in accordance with the Plan and Liquidating Trust Agreement, and in such capacity shall have the same powers as the board of directors and officers of the Debtors (and all bylaws, articles of incorporation, and related corporate documents are deemed amended by this Plan to permit and authorize the same). The Liquidating Trustee may be removed at any time by the Liquidating Trust Advisory Committee, with or without cause, upon at least ten (10) days' prior written notice to the U.S. Trustee and the Liquidating Trustee. In the event of resignation or removal, death or incapacity of the Liquidating Trustee, the Liquidating Trust Advisory Committee shall designate another Person or Entity to serve as Liquidating Trustee and thereupon the successor Liquidating Trustee, without any further act or need for an order of the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor; provided, however, that the Liquidating Trustee shall be deemed removed on the date the Chapter 11 Cases are closed, and no successor thereto shall be designated. On the Effective Date, the Creditors' Committee's Professionals shall be retained by the Liquidating Trustee, without further need for documentation or Bankruptcy Court approval, on the same terms and conditions in effect prior to the Effective Date. All fees and expenses incurred by the Liquidating Trustee and its professionals following the Effective Date shall be paid from the Liquidating Trust Assets as set forth in the Liquidating Trust Agreement.

## E.    Beneficiaries of Liquidating Trust

The holders of Allowed General Unsecured Claims shall be the beneficiaries of the Liquidating Trust. Such beneficiaries shall be bound by the Liquidating Trust Agreement. The interests of the beneficiaries in the Liquidating Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

**F.**     **Vesting and Transfer of Liquidating Trust Assets to the Liquidating Trust**

Pursuant to Bankruptcy Code section 1141(b), the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Liens, Claims, and interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; provided, however, that the Liquidating Trustee may abandon or otherwise not accept any non-Cash Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value or are burdensome to the Liquidating Trust.  Any non-Cash Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be property of the Liquidating Trust.

**G.**     **Liquidating Trust Expenses**

Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses, and obligations incurred by the Liquidating Trustee in administering this Plan, the Liquidating Trust, or in any manner connected, incidental, or related thereto, in effecting Distributions from the Liquidating Trust shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee.  Such costs, expenses, and obligations shall include Secured Claims, Administrative Claims, Tax Priority Claims, and Other Priority Claims not otherwise satisfied as of the Effective Date.  Such costs, expenses, and obligations shall be paid in accordance with the Liquidating Trust Agreement.

**H.**     **Role of the Liquidating Trustee**

**1.**     The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) as well as the representative of the Estates appointed pursuant to section 1123(b)(3) of the Bankruptcy Code regarding all Liquidating Trust Assets.  The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include, without limitation, the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including through the creation of reserves as provided for under the Plan; (b) file Tax Returns or other reports required by governmental entities and pay taxes or other obligations incurred by the Debtors, the Estates, and Liquidating Trust to the extent payable consistent with the Plan, the Bankruptcy Code, or order of the Bankruptcy Court; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Liquidating Trust Assets; (d) calculate and implement Distributions of Liquidating Trust Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidating Trust Agreement, Causes of Action vested in the Liquidating Trust; (f) address and resolve issues involving objections, reconciliation, and allowance of Claims and Equity Interests in accordance with this Plan; (g) undertake all administrative functions of the Plan and the Debtors' Chapter 11 Cases, including the payment of all Secured Claims, Administrative Claims, Priority Tax Claims, Other Priority Claims, and fees payable to the U.S. Trustee, and the ultimate closing of the Debtors' Chapter 11 Cases.  The Liquidating Trust is the successor to the Debtors and their Estates.

**2.**     On the Effective Date, the Liquidating Trustee shall: (a) take possession of all books, records, and files of the Debtors and their respective Estates; and (b) provide for the

retention and storage of such books, records, and files until such time as the Liquidating Trust determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.

> **3.** The Liquidating Trustee may, but shall not be required to, invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code section 345 or in other prudent investments, provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

> **4.** The Liquidating Trustee shall have the right to object to Claims.

> **5.** The Liquidating Trustee shall file Tax Returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Liquidating Trust also shall annually (for tax years in which Distributions from the Liquidating Trust are made) send to each known beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidating Trust. The Liquidating Trust's taxable income, gain, loss, deduction, or credit will be allocated to the Liquidating Trust's beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust. As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit for taxing purposes. The Liquidating Trustee may request an expedited determination of taxes of the Debtors or of the Liquidating Trust under Bankruptcy Code section 505(b) for all Tax Returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust. The Liquidating Trust shall be responsible for filing all Tax Returns for the Debtors and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

> **6.** The Liquidating Trust shall be responsible for payments of all Allowed tax obligations of the Debtors, and any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets.

## I.    Prosecution and Resolution of Causes of Action

> **1.** From and after the Effective Date, prosecution and settlement of all Causes of Action transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust and Liquidating Trustee pursuant to this Plan and the Confirmation Order. From and after the Effective Date, the Liquidating Trust and Liquidating Trustee shall have exclusive rights, powers, and interests of the Debtors' Estates to pursue, settle, or abandon such Causes of Action as the sole representative of the Debtors' Estates pursuant to Bankruptcy Code section

1123(b)(3). Proceeds recovered from all Causes of Action will be deposited into the Liquidating Trust and will be distributed by the Liquidating Trustee to the beneficiaries in accordance with the provisions of the Plan and Liquidating Trust Agreement. All Causes of Action that are not expressly released or waived under this Plan are reserved and preserved, transferred to and vest in the Liquidating Trust and Liquidating Trustee in accordance with this Plan. No Person may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Liquidating Trustee will not pursue any and all available Causes of Action against such Person. The Liquidating Trustee expressly reserves all Causes of Action, except for any Causes of Action against any Person that are expressly released or waived under this Plan, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of this Plan. No claims or Causes of Action against the Released Parties shall be transferred to the Liquidating Trust, the Liquidating Trustee shall not have standing to pursue such claims or Causes of Action, and all such claims and Causes of Action shall be waived, released, and discharged pursuant to the Plan.

**2.** Settlement by the Liquidating Trust of any Cause of Action transferred to the Liquidating Trust shall not require notice of approval of the Bankruptcy Court, and shall only require: (i) approval of the Liquidating Trustee in his, her, or its discretion in consultation with the Liquidating Trust Advisory Committee if the amount claimed by the Liquidating Trust against a Person is less than two hundred fifty thousand dollars ($250,000); and (ii) approval of the Liquidating Trustee in his, her, or its discretion in consultation with the Liquidating Trust Advisory Committee and the Bankruptcy Court, upon notice and a hearing, if the amount claimed by the Liquidating Trust against a Person is unliquidated or equal to or exceeds two hundred fifty thousand dollars ($250,000).

**J.      Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets**

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Debtors' Estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's beneficiaries will be treated as the grantors and owners thereof.

**K.      Limitation of Liability**

No recourse will ever be had, directly or indirectly, against the Liquidating Trustee, or his, her, or its members, officers, directors, employees, professionals, Representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Liquidating Trust

under this Plan or by reason of the creation of any indebtedness by the Liquidating Trust or the Liquidating Trustee under this Plan.  All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Liquidating Trust Assets, and the Liquidating Trustee shall have no personal liability to satisfy any such liability.  The Liquidating Trustee and its agents shall not be deemed to be the agent for any holder of a Claim in connection with Distributions made under this Plan.  The Liquidating Trust and the Liquidating Trustee and their respective officers, directors, employees, professionals, Representatives, agents, successors, or assigns will not be liable for any act they may do, or omit to do, hereunder in good faith and in the exercise of their sound judgment; provided, however, that this section will not apply to any gross negligence or willful misconduct by the Liquidating Trust and the Liquidating Trustee or their respective officers, directors, employees, professionals, Representatives, agents, successors, or assigns.  The Liquidating Trustee shall enjoy all of the rights, powers, immunities, and privileges available to a chapter 7 trustee.

**L.      Indemnification of Liquidating Trustee**

The Liquidating Trust shall indemnify the Indemnified Persons for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including, without limitation, the reasonable fees and expenses of their respective professionals) incurred without gross negligence, willful misconduct, or fraud on the part of the Indemnified Persons (which gross negligence, willful misconduct, or fraud, if any, must be determined by Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Persons in connection with the acceptance, administration, exercise, or performance of their duties under the Plan or the Liquidating Trust Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will conclusively be deemed not to constitute gross negligence, willful misconduct, or fraud.  In addition, the Liquidating Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Indemnified Persons from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, without limitation, to attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of the Plan if the Indemnified Person acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidating Trust.  To the extent that the Liquidating Trust indemnifies and holds harmless the Indemnified Persons as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as expenses of the Liquidating Trust.  The costs and expenses incurred in enforcing the right of indemnification in this Section shall be paid by the Liquidating Trust.  This provision shall survive the termination of the Liquidating Trust Agreement and the resignation, replacement, or removal of the Liquidating Trustee.

**M.      Term of Liquidating Trust**

The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated or abandoned, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled, (iv) all Distributions required

to be made by the Liquidating Trust under this Plan and the Liquidating Trust Agreement have been made, and (v) the Debtors' Chapter 11 Cases have been closed; provided, however, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that an extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets and/or Distributions in accordance with the Plan.

### N.    Retention of Professionals by Liquidating Trust

The Liquidating Trustee may, in connection with the performance of his, her, or its functions, in the Liquidating Trustee's sole and absolute discretion, retain, consult with, and compensate attorneys, accountants, advisors, or agents to assist in his, her, or its duties on such terms (including on a contingency or hourly basis) as he, she, or it deems reasonable and appropriate without Bankruptcy Court approval. The Liquidating Trustee shall not be liable for any act taken or omitted to be taken, or suggested to be done, in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and his, her, or its determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or his, her, or its members unless such determination is based on willful misconduct, gross negligence, or fraud.

### O.    Conflicts Between the Liquidating Trust Agreement and the Plan

In the event of any inconsistencies or conflict between the Liquidating Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

### P.    Cancellation of Existing Securities and Agreements

Except for purposes of evidencing a right to Distributions under the Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or rights of any holder of a Claim or Equity Interest against any of the Debtors, including, without limitation, all indentures, notes, bonds, and share certificates evidencing such Claims and Equity Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void, and satisfied, as against the Debtors but not as against any other Person.

### Q.    Operations of the Debtors Between the Confirmation Date and the Effective Date and Dissolution Thereafter

**1.**    The Debtors shall continue to operate as debtors in possession during the period from the Confirmation Date through and until the Effective Date, and as a liquidating estate on and after the Effective Date.  The retention and employment of the Professionals retained by the Debtors shall terminate as of the Effective Date, provided, however, that the Debtors shall be deemed to exist, and their Professionals shall be retained, after such date only with respect to (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, and to the extent necessary (b) motions seeking the enforcement of the provisions of the Plan or the Confirmation

22

Order.  Upon the Effective Date, the Debtors' board of directors shall be relieved of their duties and the Debtors are authorized to dissolve.

**2.**     On behalf of Gander Mountain Company, the Liquidating Trustee is authorized and directed to sign and file, as soon as is reasonably practicable, a notice of intent to dissolve with the Minnesota Secretary of State.  Confirmation of this Plan shall be deemed to constitute the corporate action, including notice and shareholder approval, required by Minn. Stat. § 302A.721.  The Liquidating Trustee is authorized and directed to sign and file, immediately upon filing the notice of intent to dissolve, articles of dissolution pursuant to Minn. Stat. § 302A.7291 and to take all other action necessary to effectuate the dissolution of Gander Mountain Company.  Confirmation of this Plan shall be deemed to satisfy the requirements of Minn. Stat. § 302A.7291, subd. 1(1) (regarding provision for the payment of claims of all known creditors and claimants) and Minn. Stat. § 302A.7291, subd. 2 (regarding "adequate provision" for payment of claims, distributions of remaining property to shareholders, and satisfaction for pending claims).  Such dissolution shall not relieve the applicable insurer of any of its obligations under any of the Debtors' insurance policies.

**3.**     On behalf of Overton's, Inc., the Liquidating Trustee is authorized and directed to sign and file, as soon as is reasonably practicable, articles of dissolution with the North Carolina Secretary of State and to take all other action necessary to effectuate the dissolution of Overton's, Inc.  Confirmation of this Plan shall be deemed to constitute the corporate action, including notice and shareholder approval, required by N.C. Gen. Stat. § 55-14-02.  Such dissolution shall not relieve the applicable insurer of any of its obligations under any of the Debtors' insurance policies.

## R.     Automatic Stay

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Cases until the Effective Date.

## S.     The Creditors' Committee

Upon the Effective Date, the Creditors' Committee shall dissolve, and their members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases.  The retention and employment of the Professionals retained by the Creditors' Committee shall terminate as of the Effective Date, provided, however, that the Creditors' Committee shall exist, and their Professionals shall be retained, after such date with respect to applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

## T.     Books and Records

As part of the appointment of the Liquidating Trustee, to the extent not already transferred on the Effective Date, the Debtors shall transfer dominion and control over all of their Books and Records to the Liquidating Trustee in whatever form, manner, or media the Books and Records existed immediately prior to the transfer thereof to the Liquidating Trustee.  The Liquidating Trustee may abandon some or all of the Books and Records on or after ninety (90)

days after the Effective Date in his, her, or its sole discretion when the Liquidating Trustee determines in his, her, or its judgment that they are of inconsequential value to the Liquidating Trust.  Any prior abandonment of the Books and Records by the Debtors prior to confirmation is hereby deemed to have been authorized.  Pursuant to section 554 of the Bankruptcy Code, this Article IV.T shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the Books and Records.

## U.      D&O Insurance Policies

No prepaid D&O Insurance Policy shall be cancelled, and the Debtors' directors, officers, and employees who have valid claims against the D&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O Insurance Policies to the extent of the coverage provided by the D&O Insurance Policies.  As such, and notwithstanding anything in the Plan to the contrary, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O Insurance Policies, to the extent the contract providing for such is determined to be an executory contract, shall be deemed assumed by the Debtors.  Any Claims of the Debtors' directors, officers and employees for indemnification against the Debtors for which such director, officer or employee is entitled to payment from the D&O Insurance Policies shall be disallowed to the extent of any coverage and shall not be entitled to receive any distribution in accordance with the terms of this Plan.

## ARTICLE V.

## PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

## A.      Voting of Claims

Pursuant to the Procedures Motion, solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or Distribution on account of, any Claim, except as set forth in paragraphs 5 and 8 below, and without prejudice to the rights of the Debtors in any context, each holder of a Claim in an Impaired Class of Claims entitled to vote to accept or reject the Plan pursuant to Article II and Article III of the Plan shall be temporarily allowed in an amount equal to the amount of such Claim as set forth in the Schedules, subject to the following exceptions:

1.      If a Claim is deemed Allowed under this Plan, such Claim is Allowed for voting purposes in the deemed Allowed amount set forth herein.

2.      If a Claim has been estimated or otherwise Allowed for voting purposes by order of the Bankruptcy Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or Distribution.

3.      If a proof of Claim was timely filed in an amount that is liquidated, non-contingent, and undisputed, such Claim is temporarily Allowed in the amount set forth in the proof of Claim, unless such Claim is disputed as set forth below.

4.      If a Claim for which a proof of Claim has been timely filed is contingent, unliquidated, or disputed, such Claim is accorded one vote and valued at $1.00 for voting purposes only, and not for purposes of classification, allowance, or Distribution, unless such Claim is disputed as set forth below.

5.      If a Claim is listed in the Schedules as contingent, unliquidated, or disputed and a proof of Claim was not (i) filed by the applicable bar date for the filing of proofs of Claims established by the Bankruptcy Court or (ii) deemed timely filed by an order of the Bankruptcy Cord prior to the Voting Deadline, the Claim shall be disallowed for voting purposes and for purposes of allowance and distribution pursuant to Bankruptcy Rule 3003(c).

6.      If a Claim is listed in the Schedules or on a timely filed proof of Claim as contingent, unliquidated, non-contingent, or Disputed in part, such a Claim shall be temporarily Allowed in the amount that is liquidated, non-contingent, and undisputed for voting purposes only, and not for purposes of allowance or Distribution.

7.      If the Debtors have served an objection or request for estimation as to a Claim at least 10 days before the Voting Deadline, such Claim shall be temporarily disallowed for voting purposes only and not for purposes of allowance or Distribution, except as ordered by the Bankruptcy Court before the Voting Deadline.

8.      For purposes of voting, classification, and treatment under the Plan, each Entity that holds or has filed more than one Claim, shall be treated as if such Entity only has one Claim in each applicable Class and the Claims filed by such Entity shall be aggregated in each applicable Class and the total dollar amount of such Entity's Claim in each applicable Class shall be the sum of the aggregated Claims of such Entity in each applicable Class.

## B.      Distribution Dates

Distributions to holders of Claims shall be made as provided in Articles II and III of the Plan and as provided in the Liquidating Trust Agreement. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## C.      Record Date for Distributions

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date. The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such

other evidence or record of transfer or assignment that was known to the Debtors as of the Record Date and is available to the Liquidating Trustee.

**D.     Delivery of Distributions**

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Liquidating Trustee at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of Claim is filed or if the Liquidating Trustee has not been notified in writing of a change of address.

**E.     Undeliverable and Unclaimed Distributions**

In the event that any Distribution to any holder of an Allowed Claim made by the Liquidating Trustee is returned as undeliverable, the Liquidating Trustee shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Liquidating Trustee has determined the then current address of such holder; provided, however, that all Distributions to holders of Allowed Claims made by the Liquidating Trustee that are unclaimed for a period of ninety (90) calendar days after the date of the first attempted Distribution shall have its, his, or her Claim for such undeliverable Distribution deemed satisfied and will be forever barred from asserting any such Claim against the Debtors or their property.  Any Cash payment made in the form of a check shall be null and void and deemed unclaimed within the meaning of Article V.E of the Plan if not cashed within ninety (90) calendar days after the date of issuance thereof, and all requests for reissuance of a check must be made to the Liquidating Trustee within ninety (90) calendar days after first issuance.  Any Distributions which are undeliverable or have not been negotiated within the time period set forth above shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert back to the Liquidating Trust, notwithstanding any federal, state, or other escheat law to the contrary.  The Liquidating Trustee shall have no further obligation to make any Distribution to the holder of such Claim on account of such Claim, any entitlement of any holder of such Claim to any such Distributions shall be extinguished and forever barred, and the Claim(s) of such holder shall be waived, discharged and forever barred without further order of the Bankruptcy Court.

**F.     Manner of Cash Payments Under the Plan**

Except as otherwise provided herein, Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

**G.     Compliance with Tax Requirements**

The Liquidating Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution on account of Claims.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims.  The Liquidating Trustee shall be authorized to collect such tax information from the holders of Claims (including social security numbers or other tax

identification numbers) as it in its sole discretion deems necessary to effectuate the Plan.  In order to receive Distributions under the Plan, all holders of Claims will need to identify themselves to the Liquidating Trustee and provide all tax information the Liquidating Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder).  The Liquidating Trustee may refuse to make a Distribution to any holder of a Claim that fails to furnish such information within ninety (90) calendar days after a request by the Liquidating Trustee for the completion and return of the appropriate form.  In such instance, (i) such holder shall be deemed to have forfeited its right to such Distributions; (ii) the Claim(s) of such holder shall be waived, discharged, and forever barred without further order of the Bankruptcy Court; and (iii) such Distribution will revert back to the Liquidating Trust notwithstanding any federal, state, or other escheat law to the contrary, provided further that, if the Liquidating Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and such Liquidating Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Liquidating Trustee for such liability.  Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, and (b) no Distributions shall be required to be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such tax obligations or has, to the Liquidating Trustee's satisfaction, established an exemption therefrom.

## H.    No Payments of Fractional Dollars

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

## I.    Interest on Claims

Except as specifically provided for in this Plan or the Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest on any Claim accruing on or after the Petition Date.  Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or similar charges.

## J.    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

**K.** **Setoff and Recoupment**

The Liquidating Trustee may setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that any of the Debtors or the Estates may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates or the Liquidating Trustee of any right of setoff or recoupment that any of them may have against the holder of any Claim.  Any such setoffs or recoupments may be challenged in Bankruptcy Court.  Notwithstanding any provision in the Plan to the contrary, nothing herein shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; provided, however, that such setoff or recoupment rights are timely asserted; provided further that all rights of the Debtors, the Estates and the Liquidating Trustee with respect thereto are reserved.

**L.** **Charitable Donation**

On or about the time that the final Distribution is made, the Liquidating Trustee may make a charitable donation with undistributed funds to such charitable organization as selected by the Liquidating Trust Advisory Committee if, in the reasonable judgment of the Liquidating Trustee, the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to the holders of Claims who would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtors or the Liquidating Trustee.

**M.** **U.S. Trustee Fees**

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Liquidating Trustee shall pay any and all such fees payable by the Debtors, when due and payable, and shall file with the Bankruptcy Court quarterly reports for each of the Debtors, in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

**N.** **Withholding from Distributions**

Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan.  The Liquidating Trustee may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the sole and reasonable discretion of the Liquidating Trustee, required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.

**O.** **No Distributions on Late-Filed Claims**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable bar date in

the Chapter 11 Cases, including, without limitation, the General Bar Date, the Twenty Day Claim Bar Date, and any bar date established in the Plan or in the Confirmation Order, shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Cases, without the need for (a) any further action by the Liquidating Trustee or (b) an order of the Bankruptcy Court. Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

## ARTICLE VI.

## DISPUTED CLAIMS

### A.      Resolution of Disputed Claims

The Liquidating Trustee shall have the right to make and file objections to Claims in the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court. Pursuant to the terms of the Liquidating Trust Agreement, the Liquidating Trustee will retain on account of Disputed Claims an amount the Liquidating Trustee estimates is necessary to fund the Pro Rata share of such Distributions to holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee.

### B.      Objection Deadline

All objections to Disputed Claims shall be filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

### C.      Estimation of Claims

At any time on or prior to the Claims Objection Bar Date, the Liquidating Trustee may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Liquidating Trustee or the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Liquidating Trustee may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**D.**     **No Distributions Pending Allowance**

Notwithstanding any other provision in the Plan, if any portion of a Claim is Disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.   Upon allowance, a holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim been Allowed on the Effective Date.

**E.**     **Resolution of Claims**

On and after the Effective Date, the Liquidating Trustee shall have the authority to compromise, settle, or otherwise resolve or withdraw any objections to Claims and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.

## ARTICLE VII.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     **Assumption or Rejection of Executory Contracts and Unexpired Leases**

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, upon the Effective Date, all executory contracts and unexpired leases that exist between one or both of the Debtors and any Person or Entity shall be deemed rejected by the Debtors, except for any executory contract or unexpired lease (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Effective Date or  (iii) that has been elected for assumption and assignment pursuant to the Designation Rights Agreement by the Designation Rights Deadline.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumption or rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption or rejection is in the best interests of the Debtors, their Estates, and all parties in interest in the Chapter 11 Cases.

**B.**     **Cure of Defaults**

By way of entering into the agreements comprising the Joint Venture Sale, including, without limitation, the Designation Rights Agreement, the Debtors and CWI, Inc. cured, or provided adequate assurance of cure of, any default existing under any agreement or real property lease elected for assignment under the Designation Rights Agreement.  The cure costs approved by the *Order Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Rights, Encumbrances and Other Interests* [Docket No. 691], the *Order Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and Granting Relating Relief* [Docket No. 730], the *Order Approving Assumption and Assignment of Executory Contracts and*

*Unexpired Leases and Granting Related Relief* [Docket No. 832], and the *Order Approving Assumption and Assignment of Unexpired Lease and Granting Related Relief* [Docket No. 1299], are the sole amounts necessary to cure any and all monetary defaults under the agreements or real property leases elected for assignment under the Designation Rights Agreement, pursuant to section 365(b) of the Bankruptcy Code, except as otherwise set forth in the *Order Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests* [ECF No. 691].  Notwithstanding Article VII.A of the Plan, the Debtors shall retain their rights to reject any of their executory contracts that are subject to a dispute concerning amounts necessary to cure any defaults through the Confirmation Date.  Notwithstanding Article VII.A of the Plan, the Debtors shall retain their rights to reject any of their executory contracts that are subject to a dispute concerning amounts necessary to cure any defaults through the Confirmation Date.

## C.     Claims Based on Rejection of Executory Contracts and Unexpired Leases

Claims created by the rejection of executory contracts and unexpired leases pursuant to Article VII.A herein, must be filed with the Bankruptcy Court and served on the Debtors and the Liquidating Trustee no later than thirty (30) days after service of notice of the Effective Date. Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Article VII.A herein for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, the Liquidating Trustee, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, shall be subject to the permanent injunction set forth in Article IX.E herein.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of the Plan, including, without limitation, Article III herein.  Nothing herein shall extend previous deadlines established for the filing of Claims created by the Debtors' prior rejection of executory contracts and unexpired leases.

## D.     Indemnification and Reimbursement

Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtors for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtors against any Claims, costs, liabilities, or causes of action as provided in the Debtors' articles of organization, certificates of incorporation, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be (i) paid only to the extent of any applicable insurance coverage, and (ii) to the extent a proof of Claim has been timely filed and is Allowed, treated as Allowed General Unsecured Claims to the extent such Claims are not covered by any applicable insurance, including deductibles.  Nothing contained herein shall affect the rights of directors, officers, or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities, or Causes of Action or limit the rights of the Debtors, the Liquidating Trustee, or the Debtors' Estates to object to, seek to subordinate, or otherwise contest or challenge Claims or rights asserted by any current or former officer, director, or employee of the Debtors.

# ARTICLE VIII.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.      Conditions Precedent**

The following are conditions precedent to the Effective Date that must be satisfied or waived:

**1.**      The Bankruptcy Court shall have entered the Confirmation Order.

**2.**      There shall be no stay or injunction in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the releases provided for herein.

**3.**      The appointment of the Liquidating Trustee shall have been confirmed by order of the Bankruptcy Court.

**4.**      All agreements and instruments that are exhibits to the Plan shall be in a form reasonably acceptable to the Debtors and the Creditors' Committee, and have been duly executed and delivered; provided, however, that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

**B.      Waiver**

Notwithstanding the foregoing conditions in Article VIII.A, the Debtors reserve, in their sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan; provided, however, the Creditors' Committee shall have the right to be consulted on and consent to any proposed modification of the Plan, the Plan Supplement, or the Confirmation Order.  Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

# ARTICLE IX.

## INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

**A.      Compromise and Settlement**

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the

Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and holders of Claims and Equity Interests.

## B.     Releases

**1.     <u>Releases by the Debtors and their Estates</u>.     Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, each of the Debtors and their current and former affiliates and Representatives and the Estates shall be deemed to have provided a full, complete, unconditional, and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtors and their current and former affiliates and Representatives, the Estates, and the Creditors' Committee and its members but solely in their capacity as members of the Creditors' Committee and not in their individual capacities), from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date, or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including, without limitation, the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to, or on, the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf of, any of the Debtors or the Estates, including those in any way related to the Chapter 11 Cases or the Plan; <u>provided</u>, <u>however</u>, that the foregoing release shall not prohibit the Debtors or the Liquidating Trustee from asserting any and all affirmative claims, defenses, and counterclaims in respect of any Disputed Claim asserted by any Released Parties.**

**2.     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article IX.B pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action released by this Plan; (b) in the best interests of the Debtors and all holders of Claims and Equity Interests; (c) fair, equitable, and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the assertion of any Claim or Cause of Action thereby released.**

## C.     Exculpation

**Notwithstanding anything contained in the Plan to the contrary, the Released Parties shall neither have nor incur any liability relating to these Chapter 11 Cases to any Entity for any and all Claims and Causes of Action arising after the Petition Date and through the Effective Date, including, without limitation, any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan or distributing property thereunder, the Disclosure Statement, or any other contract, instrument, release,**

**or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases, including, without limitation, the Sales and the DIP Orders; provided, however, that the foregoing provisions of this Article IX.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.**

**D.      Preservation of Causes of Action**

**1.**      Vesting of Causes of Action

**(a)**      Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors and the Estates may hold against any Entity shall automatically be transferred to and vest in the Liquidating Trust on the Effective Date.

**(b)**      Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action that were held by the Debtors and the Estates, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

**2.**      Preservation of All Causes of Action Not Expressly Settled or Released

**(a)**      Unless a Cause of Action against a holder or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order) of the Bankruptcy Court, the Debtors and their Estates expressly reserve such Cause of Action for later adjudication or administration by the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).  In addition, the Debtors and their Estates expressly reserve the right of the Liquidating Trustee to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

**(b)**      Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of

34

money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of Claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors have objected to any such Entity's proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors as disputed, contingent, or unliquidated.

## E.    Injunction

**1.**    From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Creditors' Committee, their successors and assigns, and their assets and properties, as the case may be, any suit, action, or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest, or remedy released or satisfied or to be released or satisfied pursuant to the Plan or the Confirmation Order.

**2.**    Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Creditors' Committee, their successors and assigns, and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions, or assertions of Liens relate to property that will be distributed pursuant to this Plan or the Confirmation Order.

**3.**    The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtors or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions, or assertions of Liens relate to property that will be distributed pursuant to this Plan or the Confirmation Order.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

**4.**    Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released pursuant to the Plan or Confirmation Order, from:

**(a)**    commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, any Estate, the Liquidating Trust, the Liquidating

Trustee, the Creditors' Committee, their successors and assigns, and their assets and properties;

**(b)** enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Debtor, any Estate, the Liquidating Trust, the Liquidating Trustee, the Creditors' Committee, their successors and assigns, and their assets and properties;

**(c)** creating, perfecting, or enforcing any encumbrance of any kind against any Debtor, any Estate, the Liquidating Trust, the Liquidating Trustee, the Creditors' Committee, their successors and assigns, and their assets and properties; and

**(d)** commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.

**F.      Releases of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against property of the Estates distributed under the Plan shall be fully released and discharged and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interest shall revert to the Debtors.

### ARTICLE X.

### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities, including, without limitation, the Liquidating Trustee, with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as is legally permissible, including, without limitation, jurisdiction to:

**1.** allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest against the Debtors, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

**2.** grant, deny, or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Cases by the Debtors or the Creditors' Committee for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

**3.** resolve any matters related to the assumption, assignment, or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a

Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

    **4.**    ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including, without limitation, by resolving any disputes regarding the Debtors' entitlement to recover assets held by third parties;

    **5.**    decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date;

    **6.**    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures, and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

    **7.**    resolve any cases, controversies, suits, or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan, or any Entity's obligations incurred in connection with the Plan;

    **8.**    issue injunctions, enforce them, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

    **9.**    resolve any cases, controversies, suits, or disputes with respect to the releases, injunction, and other provisions contained in Article IX herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions, and other provisions;

    **10.**    enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked, or vacated;

    **11.**    resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

    **12.**    enter an order and a Final Decree closing the Chapter 11 Cases.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

### A.    Modification of Plan

Subject to the limitations contained in the Plan and <u>provided</u> that the Creditors' Committee shall have the right to be consulted on any proposed modification of the Confirmation Order and the Plan, the Debtors reserve the right, in accordance with the

Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; provided, however, that (1) any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan; and (2) after the entry of the Confirmation Order, the Debtors or the Liquidating Trustee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

## B.    Revocation of Plan

The Debtors, in consultation with the Creditors' Committee, reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

## C.    Binding Effect

On the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, a Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

## D.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

## E.    Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Minnesota without giving effect to the principles of conflict of laws thereof.

**F.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Effective Date occurs.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

**G.      Article 1146 Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp, real estate transfer, other transfer, mortgage reports, sale, use, or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**H.      Section 1125(e) Good Faith Compliance**

Confirmation of the Plan shall act as a finding by the Court that the Debtors and each of their respective Representatives have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**I.      Further Assurances**

The Debtors, the Liquidating Trustee, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**J.      Service of Documents**

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by first class U.S. mail, postage prepaid as follows:

**To the Debtors:**

> Gander Mountain Company and Overton's Inc.
> c/o Lighthouse Management Group, Inc.
> Attention: Timothy G. Becker
> 900 Long Lake Road, Suite 180
> New Brighton, MN 55112
> Telephone: (651) 439-5119
> Facsimile: (651) 967-1964
> E-mail: tbecker@lighthousemanagement.com

*with a copy to*

> Fredrikson & Byron, P.A.
> Attention: Clinton E. Cutler
> 200 South Sixth Street, Suite 4000
> Minneapolis, MN 55402-1425
> Telephone: (612) 492-7000
> E-mail: ccutler@fredlaw.com

**To the Liquidating Trust Advisory Committee:**

> Lowenstein Sandler LLP
> Attention: Jeffrey Cohen and Keara Waldron
> 1251 Avenue of the Americas
> New York, New York 10020
> Telephone: (212) 262-6700
> Facsimile: (212) 262-7402
> E-mail: jcohen@lowenstein.com

> -and-

> Barnes & Thornburg LLP
> Attention: Connie A. Lahn
> 2800 Capella Tower
> 225 South Sixth Street
> Minneapolis, MN 55402-4662
> Telephone: (612) 333-2111
> Facsimile: (612) 333-6798
> E-mail: clahn@btlaw.com

**To the Liquidating Trustee:**

> [INSERT CONTACT INFORMATION]

**K.      Filing of Additional Documents**

On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**L.      No Stay of Confirmation Order**

The Plan Proponents shall request that the Court waive stay of enforcement of the Confirmation Order otherwise applicable, including pursuant to Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and 7062.

*[remainder of page intentionally left blank]*

Dated:    October 31, 2017

**Gander Mountain Company**

By:

Name: James A. Bartholomew
Title:  President of Lighthouse
Management Group, Inc., the Chief
Restructuring Officer of the Debtors

**Overton's, Inc.**

By:

Name: James A. Bartholomew
Title:  President of Lighthouse
Management Group, Inc., the Chief
Restructuring Officer of the Debtors

/e/ Clinton E. Cutler
Clinton E. Cutler (#0158094)
Cynthia A. Moyer (#0211229)
Ryan T. Murphy (#0311972)
James C. Brand (#387362)
Sarah M. Olson (#0390238)
Steven R. Kinsella (#0392289)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
ccutler@fredlaw.com
cmoyer@fredlaw.com
rmurphy@fredlaw.com
jbrand@fredlaw.com
solson@fredlaw.com
skinsella@fredlaw.com
**ATTORNEYS FOR THE DEBTORS**


/e/ Jeffrey Cohen
Jeffrey Cohen (admitted *pro hac vice*)
Keara Waldron (admitted *pro hac vice*)
**Lowenstein Sandler LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
jcohen@lowenstein.com
kwaldron@lowenstein.com

-and-

Connie A. Lahn
**Barnes & Thornburg LLP**
2800 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402-4662
Telephone: (612) 333-2111
Facsimile: (612) 333-6798
clahn@btlaw.com
**ATTORNEYS FOR THE CREDITORS'
COMMITTEE**

61917390.7